E-FILED
Friday, 15 September, 2017  01:47:00 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

| | | |
|---|---|---|
| JASON YOUNG, as Administrator of the Estate of TYLOR D. YOUNG, Deceased, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Case No.:  16-cv-01367<br><br>Jury Demand |
| PEORIA COUNTY,<br>PEORIA COUNTY SHERIFF MICHAEL D. MCCOY,<br>CORRECTIONS SUPERINTENDENTBRIAN ASBELL,<br>OFFICER MORGAN HANSE, OFFICER ALEC MICHEL,<br>OFFICER MICHAEL SMITH, OFFICER STAN KESTER,<br>NURSE OLIVIA RADCLIFF-TISH,<br>CORRECTIONAL HEALTHCARE COMPANIES, INC, and<br>CORRECT CARE SOLUTIONS, LLC, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**<u>SECOND AMENDED COMPLAINT</u>**

NOW COMES the Plaintiff, JASON YOUNG, as Administrator of the Estate of TYLOR D. YOUNG, Deceased ("Plaintiff"), by and through his attorneys, STRONG LAW OFFICES, and complaining of the Defendants, PEORIA COUNTY, PEORIA COUNTY SHERIFF MICHAEL D. MCCOY, CORRECTIONS SUPERINTENDENTBRIAN ASBELL, OFFICER MORGAN HANSE, OFFICER ALEC MICHEL, OFFICER MICHAEL SMITH, OFFICER STAN KESTER, OLIVIA RADCLIFF-TISH, CORRECTIONAL HEALTHCARE COMPANIES, INC, and CORRECT CARE SOLUTIONS, LLC, alleges as follows:

**<u>INTRODUCTION</u>**

1.      This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of the Decedent, TYLOR D. YOUNG's rights as secured by the Fourteenth

Amendment to the United States Constitution, pursuant to the Americans With Disabilities Act ("ADA") - 42 U.S.C. § 12132, and Illinois Wrongful Death Act - 740 ILCS 180/1.

2.　　　　That the Decedent, TYLOR D. YOUNG (hereinafter "TYLOR") was a 22-year old man at the time of his death.  That TYLOR had developed a heroin and opioid addition, and due to his addition had for a number of years prior to his death cycled in and out of the Peoria County Jail.

3.　　　　That the Decedent, TYLOR, was a pre-trial detainee, and died while a prisoner and inmate at the Peoria County Jail because the Defendants failed to protect him, failed to perform their duties to him, and demonstrated a deliberate and utter indifference to him.

4.　　　　That the Decedent, TYLOR, was known to the Defendants based upon the current booking, as well as prior bookings, to be suicidal, had previously been on suicide watch, was known to suffer from mental illness, anxiety and depression, was known to suffer from opioid withdrawal, and was known to have been in an ongoing and active methadone treatment program and/or narcotic treatment program ("NTP").

5.　　　　That on or about October 12, 2014 the Decedent, TYLOR, was found hanging in his cell with a bed sheet thereby causing the Decedent, TYLOR, to sustain severe and permanent injuries resulting in his death on October 12, 2014.

## JURISDICTION AND VENUE

6.　　　　This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

7.　　　　That venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events, acts and/or omissions giving rise to the claim occurred in this judicial district.

## PARTIES

8.      The Decedent, TYLOR, was a 22-year old pre-trial detainee who was a prisoner and inmate at the Peoria County Jail in Peoria, Illinois from October 6, 2014, until his suicide on October 12, 2014.   That the Decedent, TYLOR, was qualified under the Americans with Disabilities Act as a person with a disability of serious drug addiction.

9.      That the Plaintiff, JASON YOUNG, is a citizen of the State of Illinois and resides in Bartonville, Illinois, and is the duly appointed Administrator of the Estate of TYLOR D. YOUNG, Deceased.

10.      That the Defendant, PEORIA COUNTY, is a county of the State of Illinois, a local governmental entity in the State of Illinois, and owns the Peoria County Jail which is a municipal jail existing under the laws of the State of Illinois.   That the Defendant, PEORIA COUNTY, is sued as a necessary party to this action in that this action is seeking damages from the Co-Defendant, PEORIA COUNTY SHERIFF MICHAEL D. MCCOY, in his official capacity, because the PEORIA COUNTY SHERIFF MICHAEL D. MCCOY is an independently elected county official, and because PEORIA COUNTY must indemnify the Co-Defendant, PEORIA COUNTY SHERIFF MICHAEL D. MCCOY, for any judgment entered against the county sheriff in an official capacity.

11.      That the Defendant, PEORIA COUNTY SHERIFF MICHAEL D. MCCOY (hereinafter "SHERIFF") is the elected Sheriff of Peoria County, and whose office is responsible for oversight of the Peoria County Jail.  The Defendant, SHERIFF is sued in his individual and official capacity as the Sheriff of Peoria County.

12.      At all relevant times herein, the Defendant, SHERIFF, was charged with the operation, management, maintenance, staffing, employment of personnel necessary to operate

and maintain the Peoria County Jail, and otherwise provide for the care and custody of the Peoria County Jail.  That at all relevant times herein, the Defendant, SHERIFF, was the warden of the Peoria County Jail, and therefore charged with the management, supervision, and care and custody of prisoners and inmates located therein including the Decedent, TYLOR, who was a pre-trial detainee at the Peoria County Jail.

13.    That at all relevant times, the Defendant, SHERIFF, was charged with the duties to serve and protect the public, to preserve and protect the health, safety, and life of prisoners, and to maintain the peace and dignity of the Peoria County Jail and of Peoria County.

14.    That at all relevant times herein, the Defendant, SHERIFF, was acting under color of law, and promulgated rules, regulations, policies, practices, and procedures as Sheriff of Peoria County to serve and protect the public, to preserve and protect the health, safety, and life of prisoners, and to maintain the peace and dignity of the Peoria County Jail and of Peoria County.

15.    That at all relevant times herein, the Defendant, SHERIFF, was acting under color of law, and promulgated rules, regulations, policies, practices, and procedures as Sheriff of Peoria County for the provision of certain mental health care by medical personnel and correctional officers to prisoners, inmates and detainees at the Peoria County Jail, including, but not limited to, the Decedent, TYLOR, who was a pre-trial detainee at the Peoria County Jail.

16.    That at all relevant times the Defendant, CORRECTIONS SUPERINTENDENT BRIAN ASBELL (hereinafter "ASBELL") is the Corrections Superintendent of the Peoria County Jail.  At all relevant times herein, the Defendant, ASBELL, was employed by the Defendant, SHERIFF, and as such he was acting under color of law and within the course and scope of his employment in the promulgation and implementation of rules, regulations, policies,

practices, and procedures for the operation, management and supervision of all aspects of operations at the Peoria County Jail. That the Defendant, ASBELL, is sued in his official and individual capacity.

17.     That at all relevant times herein the Defendants, OFFICER MORGAN HANSE, OFFICER ALEC MICHEL, OFFICER MICHAEL SMITH, and OFFICER STAN KESTER (hereinafter "SHERIFF'S EMPLOYEES"), are/were employees and/or agents of the Defendant, SHERIFF, and are/were acting under color of law and within the scope and course of their employment with the Defendant, SHERIFF. That the Defendants, SHERIFF'S EMPLOYEES, are sued in their individual and official capacities.

18.     That at all relevant times herein there was in full force and effect a contract between the Defendants, CORRECTIONAL HEALTHCARE COMPANIES, INC (hereinafter "CHCI"), and CORRECT CARE SOLUTIONS, LLC (hereinafter "CCS"), and the Co-Defendants, SHERIFF and PEORIA COUNTY, under which the Defendants, CHCI and CCS, agreed to provide medical, physical, mental, and psychiatric health exams, evaluations, screenings, and medical and mental health care services for prisoners, inmates, and pre-trial detainees at the Peoria County Jail, including, but not limited to the Decedent, TYLOR, who was a pre-trial detainee at the Peoria County Jail.

19.     That at all relevant times herein the Defendants, CHCI and CCS, were responsible for providing all medical services to detainees, including, but not limited to assessment of need for services, provision of care and treatment services for all health care needs and follow up, and for hiring, training, supervision and conduct of all health care providers at the Peoria County Jail. That at all relevant times CHCI and CCS, by and through its employees and agents, were acting in the course and scope of their contract and employment, and were acting under color of law.

20.     That the Defendants, CHCI and CCS, were each responsible for the establishment and implementation of the policies, procedures, practices, and customs, as well as the acts and/or omissions alleged in this suit.

21.     That at all relevant times herein the Defendant, NURSE OLIVIA RADCLIFF-TISH (hereinafter "NURSE"), was a Registered Nurse, was employed by the Co-Defendants, CHCI and CCS, and was responsible for patient care at the Peoria County Jail.  That the Defendant, NURSE, was responsible for providing medical, physical, mental, and psychiatric health exams, evaluations, screenings, and medical and mental health care services for prisoners, inmates, and pre-trial detainees at the Peoria County Jail, including, but not limited to the Decedent, TYLOR, who was a pre-trial detainee at the Peoria County Jail.

22.     That at all relevant times herein the Defendant, NURSE, was present at the Peoria County Jail, and was responsible for the timely response to the mental health care needs occurring, and coming to her attention for pre-trial detainees at the Peoria County Jail, including, but not limited to the Decedent, TYLOR, who was a pre-trial detainee at the Peoria County Jail.

23.     That at all relevant times herein the Defendant, NURSE, was acting under color of law and within the scope of her employment and/or agency with CHCI and CCS at the Peoria County Jail.

## COMMON FACTUAL ALLEGATIONS

24.     That on or about October 12, 2014, prior thereto, and at all relevant times herein, the Decedent, TYLOR, was a pre-trial detainee, prisoner and inmate, and in the care and custody of the Defendants, and housed in the Peoria County Jail located at approximately 301 N. Maxwell Road in the City of Peoria, Peoria County, and State of Illinois.

25.     That prior thereto, on October 6, 2014, the Decedent, TYLOR, had been booked into the Peoria County Jail on a charge of failure to appear.

26.     That at the time of the Decedent, TYLOR's, arrest, prior thereto and at all relevant times the Decedent, TYLOR, was struggling with heroin addiction, asthma, depression, anxiety, and other mental health problems.

27.     That upon booking and receiving into the Peoria County Jail on October 6, 2014, the Decedent, TYLOR, was examined and evaluated by agents and employees of the Defendants, SHERIFF and ASBELL, and the Defendants, CHCI and CCS, for medical and psychiatric issues, however, they failed to recognize, or deliberately disregarded the Decedent, TYLOR's, serious medical and psychiatric problems.

28.     That the agents and employees of the Defendants, SHERIFF and ASBELL, and the Defendants, CHCI and CCS, were aware that the Decedent, TYLOR, had been previously hospitalized for depression and anxiety prior to his booking on October 6, 2014.

29.     That the agents and employees of the Defendants SHERIFF and ASBELL, and the Defendants, CHCI and CCS, were aware that the Decedent, TYLOR, had previously attempted suicide prior to his booking on October 6, 2014, and that the Decedent, TYLOR, had a history of attempting to hang himself on multiple prior occasions.

30.     That on October 6, 2014, the Decedent, TYLOR, was in the custody of the Defendant, SHERIFF, at the Peoria County Jail and was examined and evaluated by the agents and employees of the Defendants, SHERIFF and ASBELL, and the Defendants, CHCI and CCS, as suffering from heroin abuse, withdrawal, was in participation in a Narcotic Treatment Program ("NTP"), asthma, mental health problems and was deemed to be a suicide risk and a medical alert as a pre-trial detainee.

31.     That on October 6, 2014, while the Decedent, TYLOR, was in the custody of the Defendant, SHERIFF, at the Peoria County Jail, the Decedent, TYLOR, was evaluated by the agents and employees of the Defendants, SHERIFF and ASBELL, and the Defendants, CHCI and CCS, as taking Methadone, daily, as part of an NTP.  Further, the Decedent, TYLOR, was exhibiting obvious and severe symptoms of opioid withdrawal, including, but not limited to, nausea, vomiting, and sweats.

32.     That at the aforesaid time, prior thereto, and at all relevant times herein, the Defendants, SHERIFF, ASBELL, and SHERIFF'S EMPLOYEES were under a duty and were required to monitor the prisoners and inmates at the Peoria County Jail, were under a duty and were required to make scheduled rounds at the Peoria County Jail.

33.     That at the aforesaid time, prior thereto, and at all relevant times herein, the Defendants, SHERIFF, ASBELL, SHERIFF'S EMPLOYEES, CCS, CHCI, and NURSE were all under a duty and were required to inspect, examine, observe, and evaluate the physical and mental condition, health and safety of the prisoners and inmates at the Peoria County Jail, including the Decedent, TYLOR, who was a pre-trial detainee at the Peoria County Jail.

34.     That at the aforesaid time, prior thereto, and at all relevant times herein the Defendants, SHERIFF, ASBELL, and SHERIFF'S EMPLOYEES were under a duty to operate, maintain, manage and control the Peoria County Jail, and were under a duty and charged with preserving and protecting the health, safety, life and welfare of inmates and prisoners in their care and custody at the Peoria County Jail, including the Decedent, TYLOR, who was a pre-trial detainee at the Peoria County Jail.

35.     That at the aforesaid time, prior thereto, and at all relevant times herein the Defendants, CHCI, CCS, and NURSE were under a duty and charged with preserving and

8

protecting the health, safety, life and welfare of inmates and prisoners in their care and custody at the Peoria County Jail, including the Decedent, TYLOR, who was a pre-trial detainee at the Peoria County Jail

36.     That at the time of his "booking", the Decedent, TYLOR received physical, mental, and psychiatric health exams, evaluations, and/or screenings by the agents and employees of the Defendant, SHERIFF and ASBELL, and the Defendants, CHCI and CCS, that indicated that the Decedent, TYLOR, was an opioid addict, was engaged in a "NTP" and/or actively engaged in a methadone program.

37.     That the Defendant, OFFICER MORGAN HANSE, was present in "booking" on October 6, 2014 when the Decedent, TYLOR, was brought in and evaluated.

38.     That at the time of his "booking", the Decedent, TYLOR, was evaluated as suffering from drug addiction and mental health disability by the agents and employees of the Defendant, SHERIFF and ASBELL, and the Defendants, CHCI and CCS.

39.     That at the time of his "booking" the Defendant, OFFICER MORGAN HANSE, was aware and knew that the Decedent, TYLOR, was suffering from drug addiction, mental health disability, required both physical and mental health treatment, and should have been placed in the withdrawal protocol program.

40.     That at the time of his "booking", the Decedent, TYLOR was known, or should have been reasonably known to the Defendants, SHERIFF, ASBELL, SHERIFF'S EMPLOYEES, CHCI, CCS, and NURSE, as well as the agents and employees of the Defendants, SHERIFF and ASBELL, and the Defendants, CHCI and CCS, as being at higher risk of suicide, significant risk for opioid withdrawal and/or opioid withdrawal related symptoms

thereby placing him at a heightened risk of attempting suicide and/or displaying suicidal tendencies and/or intentions.

41.    That at all relevant times herein, the Decedent, TYLOR, was known to the Defendants, SHERIFF, SHERIFF, ASBELL, SHERIFF'S EMPLOYEES, CHCI, CCS, and NURSE, as a "repeat" pre-trial detainee, inmate and/or prisoner at the Peoria County Jail, and had been on "suicide watch" on prior incarcerations at the Peoria County Jail.

42.    That it is widely known throughout the correctional field and extensively documented that suicides in jails occur at a rate several times greater than in the general public. A recent study from the U.S. Department of Justice-Bureau of Justice Statistics found that suicide has been the leading cause of death in jails every year since 2000. U.S. Dept. of Justice, Bureau of Justice Statistics, *Mortality in Local Jails and State Prisons, 2000-2013 – Statistical Tables*, August 2015 (available at http://wwwlbjs.gov/index.cfm?ty=pbdetail&iid=5341).

43.    Further, a 2010 study published by the U.S. Department of Justice National Institute of Corrections reported that 47% of jail suicides were detainees who had a history of substance abuse, and 70% of jail suicides occurred within four months of confinement. Lindsey Hayes, National Center on Institutions and Alternatives, *National Study of Jail Suicides 20 Years Later*, April 2010, at xi (available at http://static.nicic.gov/Library/024308.pdf).

44.    Another study, published in 2003, by the Human Rights Watch also reported that "young men, persons with mental illness, alcohol and drug addicts, and people who are in custody, are amongst the most at-risk groups for suicide." Human Rights Watch, *Ill-Equipped, U.S. Prisons and Offenders with Mental Illness*, October 2003, at 186 (available at http://www.hrw.org/report/2003/10/21/ill-equipped/us-prisons-and-offenders-mental-illness).

45. That despite this institutional knowledge, and the Defendants' knowledge of the Decedent, TYLOR's, history of mental illness and drug addiction, the Defendants and the Peoria County Jail failed to exercise ordinary and reasonable care for the preservation of his health and life.

46. That the Decedent, TYLOR, was denied access to, and/or was not given methadone or any other adequate treatment or medication for his opioid withdrawal symptoms, and mental distress despite being observed by the Defendants, SHERIFF, ASBELL, SHERIFF'S EMPLOYEES, CHCI, CCS, and NURSE, as well as the agents and employees of the Defendants, SHERIFF and ASBELL, and the Defendants, CHCI and CCS, as exhibiting withdrawal symptoms and severe mental distress on October 6-9, 2014.

47. That further, on or about October 10, 2014, while in the care and custody of the Defendants, SHERIFF, ASBELL, SHERIFF'S EMPLOYEES, CHCI, CCS, and their agents and employees the Decedent, TYLOR, was exhibiting verbal and non-verbal behaviors, and characteristics associated with mental illness and distress which included, but were not limited to, anxiety, appetite change, and refusal to communicate and/or cooperate with the Defendants.

48. That further, on or about October 10, 2014, the Decedent, TYLOR, placed a telephone call to his grandparents, Larry and Janice Young, during which he pleaded for them to assist him and bond him out of the Peoria County Jail, expressing to them that he wasn't going to make it in Jail, and that he was going to kill himself.

49. That the Decedent, TYLOR's, October 10, 2014 telephone call with his grandparents was recorded by the Defendants, SHERIFF, ASBELL, and SHERIFF'S EMPLOYEES, through the Peoria County Jail's telephone call recorder which recorded the Decedent, TYLOR, state several times that he [TYLOR] couldn't make it in jail and that he was

going to kill himself, and state several times, unequivocally "I swear to god if you don't bond me out I am going to kill myself".

50.     That on October 10, 2014, the Defendants, CHCI, CCS, and NURSE, had discharged the Decedent, TYLOR, from observation despite knowing that he was not receiving methadone for his opioid addiction treatment, and having observed the Decedent, TYLOR, exhibiting withdrawal symptoms, exhibiting verbal and non-verbal behaviors, and characteristics associated with mental illness and distress which included, but were not limited to, anxiety, appetite change, and refusal to communicate and/or cooperate with the Defendants.

51.     That the Defendants, CHCI, CCI, and NURSE, each failed to re-examine, re-evaluate, and/or re-assess the Decedent, TYLOR's, mental health, and suicide risk despite his unequivocal statements of his intent to commit suicide and kill himself on October 10, 2014.

52.     That the Decedent, TYLOR, was known and/or should have been reasonably known to the Defendants to be at high risk for suicide, and in fact exhibited numerous suicide risk factors: (i) young male with history of substance abuse; (ii) had been in custody on multiple prior occasions, and had been in custody at the time of the subject occurrence for approximately 6 days; (iii) verbally expressed clear intent to attempt suicide and/or to attempt to harm and injure himself while in custody; and (iv) was denied access to his NTP thereby exacerbating his opioid withdrawal and opioid withdrawal symptoms.

53.     That the Decedent, TYLOR, had received an examination and/or evaluation for physical, and mental health at the time of "booking" wherein he was deemed to be a suicide risk, however, he was placed into the general population.

54.     That "F-Pod" where the Decedent, TYLOR D. YOUNG, was housed does not provide adequate suicide-proof cells, and/or does not allow for adequate supervision of "at-risk" inmates and prisoners, including, but not limited to, the Decedent, TYLOR D. YOUNG.

55.     That the Decedent, TYLOR, was recorded by the Defendants, SHERIFF, ASBELL, and SHERIFF'S EMPLOYEES, verbalizing his intent to attempt to kill himself while he was a pre-trial detainee at the Peoria County Jail, and in the care and custody of the Defendants, SHERIFF, ASBELL, and SHERIFF'S EMPLOYEES.

56.     That the Decedent, TYLOR, was not placed on suicide watch, not placed in a suicide proof cell, remained in the general population, and was unsupervised thereby allowing the Decedent, TYLOR, to commit suicide by hanging himself.

57.     That on October 12, 2014 shortly after 11:00 AM, the Decedent, TYLOR, was found by the Defendant, SHERIFF'S EMPLOYEES, to be hanging by his neck with a bed sheet looped through a metal fixture in his cell.

58.     That notwithstanding their duties owing to the Decedent, TYLOR, the Defendants, SHERIFF, ASBELL, SHERIFF'S EMPLOYEES, CHCI, CCS, and NURSE were each then and there guilty of willful and wanton, and/or deliberate indifference for the safety, welfare, and life of the Decedent, TYLOR.

59.     That the Defendants each failed to properly and adequately supervise the activities of the Decedent, TYLOR, while he was in the care and custody of the Defendants, and at a time when each of the Defendants knew or should have reasonably known that the decedent was at risk to commit suicide through their interactions with him from October 6, 2014 through his statements of his intentions to commit suicide on October 10, 2014.

60.    That each of the Defendants failed to properly and adequately observe and monitor the activities of the Decedent, TYLOR, while he was in the care and custody of the Defendants, and at a time when each of the Defendants knew or should have reasonably known that the decedent was at risk to commit suicide through their interactions with the Decedent, TYLOR, from his original booking on October 6, 2014 through his verbalizing his intentions on October 10, 2014 to commit suicide.

61.    That each of the Defendants failed to provide adequate and proper supervision, observation, and/or monitoring of the Decedent, TYLOR D. YOUNG, while he was in the care and custody of the Defendants when they knew or should have reasonably known that the Decedent, TYLOR's, health, safety, welfare, and life were at risk and in danger, and that there was a high risk that the Decedent, TYLOR, would follow through on his statement of intent to commit or attempt to commit suicide on October 10, 2014.

62.    That the Defendants, SHERIFF, ASBELL, and SHERIFF'S EMPLOYEES, each failed to remove and/or adequately and properly ensure the removal of dangerous and/or reasonably foreseeably dangerous items and effects from the Decedent, TYLOR's, prison cell while he was in the care and custody of the Defendants thereby permitting the Decedent, TYLOR, access to and/or possession of dangerous instrumentalities, items and/or effects for use in committing and/or attempting to commit suicide when as of October 10, 2014 the Defendants knew or should have reasonably known that the decedent's health, safety, welfare, and life were at risk and in danger, and that there was a high risk that the Decedent, TYLOR, would commit or attempt to commit suicide.

63.    That the Defendants, SHERIFF, ASBELL, and SHERIFF'S EMPLOYEES, each failed to adhere to and/or have adequate policies, practices, procedures, and rules for the Peoria

County Jail, and the Peoria County Sheriff and their employees, agents and servants for the adequate and proper handling, screening, evaluating, examining, identifying, and the continuous supervision and monitoring of inmates and prisoners, including the Decedent, TYLOR, who were known to the Defendants and/or who the Defendants should have reasonably known to pose a risk and danger to their own health, safety, welfare, and life and/or who posed a risk of committing suicide and/or attempting suicide.

64.     That the Defendants, SHERIFF, ASBELL, and SHERIFF'S EMPLOYEES, each knew or should have reasonably known that the Decedent, TYLOR D. YOUNG, was a suicide risk based upon their initial screening on October 6, 2014, their subsequent observation of his verbal and non-verbal behaviors, and exhibiting withdrawal symptoms and mental distress from October 6-10, 2014, and by the plain statements of the Decedent, TYLOR, that he intended to commit suicide and/or attempt to commit suicide on October 10, 2014, and they each failed to provide him with adequate and proper mental health services, failed to place him in a suicide-proof cell, failed to conduct adequate checks on him while he was in his cell, and intentionally disregarded the known and apparent substantial risk that the Decedent, TYLOR, would harm or attempt to harm himself while in their care and custody as a pre-trial detainee at the Peoria County Jail.

65.     That the Defendants, SHERIFF and ASBELL, each failed to have adequate, proper, and sufficient jail officer staffing levels so as to provide adequate and proper monitoring and supervision of prisoners and inmates, including the Decedent, TYLOR.

66.     That the Defendants, SHERIFF and ASBELL, each failed to implement, adopt, and utilize proper and adequate rules, policies, practices, and procedures to adequately and

properly screen, examine, evaluate, and treat opioid-addicted inmates and prisoners who become incarcerated.

67.     That the Defendants, SHERIFF, ASBELL, CHCI, CCS, and NURSE, each failed to implement, adopt, and utilize proper and adequate rules, policies, practices, and procedures to adequately and properly screen, examine, evaluate, and treat opioid-addicted pre-trial detainees, inmates and prisoners who become incarcerated while they are active patients in a NTP, and/or receive prescription methadone or alternatives as part of an opioid –addiction treatment program.

68.     That the Defendants, SHERIFF, ASBELL, CHCI, CCS, and NURSE, each failed to implement, adopt, and utilize proper and adequate rules, policies, practices, and procedures to adequately and properly screen, examine, evaluate, and treat opioid-addicted inmates and prisoners who become incarcerated and experience and/or exhibit sign and symptoms of opioid-addiction withdrawal.

69.     That the Defendants, SHERIFF and ASBELL, each failed to implement, adopt, and utilize proper and adequate training policies, rules, practices, and procedures to train officers, employees and servants, including the Defendants, SHERIFF'S EMPLOYEES, of the Peoria County Jail to recognize verbal and non-verbal signs and symptoms of opioid addiction and/or opioid withdrawal so as to provide adequate and proper monitoring, supervision, treatment and care to such prisoners and inmates, including, but not limited to the Decedent, TYLOR, who was a pre-trial detainee at the Peoria County Jail and who was exhibiting signs and symptoms of opioid withdrawal, and severe mental distress on numerous occasions between October 6-10, 2014.

70.     That the Defendants, CHCI and CCS, each failed to implement, adopt, and utilize proper and adequate training policies, rules, practices, and procedures to train officers,

employees and servants, including the Defendant, NURSE, who were working at the Peoria County Jail to recognize verbal and non-verbal signs and symptoms of opioid addiction and/or opioid withdrawal so as to provide adequate and proper monitoring, supervision, treatment and care to such prisoners and inmates, including, but not limited to the Decedent, TYLOR, who was a pre-trial detainee at the Peoria County Jail and who was exhibiting signs and symptoms of opioid withdrawal, and severe mental distress on numerous occasions between October 6-10, 2014.

71.    That the Defendants, SHERIFF, ASBELL, and SHERIFF'S EMPLOYEES, each failed to respond properly and adequately, and were deliberately indifferent to the direct statements on October 10, 2014 of the Decedent, TYLOR, that he intended to kill himself, and that he could not make it in [Peoria County] Jail by placing the Decedent, TYLOR, on suicide watch, by placing the Decedent, TYLOR, in a suicide proof cell, by referring the Decedent, TYLOR, to mental health treatment, and/or preventing the Decedent, TYLOR, from committing a foreseeable suicide.

72.    That the Defendants, CHCI, CCS, and NURSE each failed to act properly and adequately, and were deliberately indifferent to the Decedent, TYLOR, based upon their direct observations, evaluations, and assessments of the Decedent, TYLOR, between October 6, 2014 and October 10, 2014 as exhibiting characteristics consistent with opioid withdrawal, severe mental distress, suicidal intentions, and mental illness by failing to provide methadone, access to proper mental health treatment, and access to suicide prevention.  Further, the Defendants, CHCI, CCS, and NURSE discharged the Decedent, TYLOR, from observation without any instruction and/or orders for further assessment and/or continued observation despite his

continuing symptoms thereby acting with deliberate indifference to the mental health needs of the Decedent, TYLOR, who was a pre-trial detainee at the Peoria County Jail.

73.     That at the aforesaid time and place, each of the Defendants, SHERIFF, ASBELL, SHERIFF'S EMPLOYEES, CHCI, CCS, and NURSE, were then and there guilty of one or more of the aforesaid willful and wanton acts and/or omissions in deliberate disregard and indifference for the health, life, safety and welfare of the Decedent, TYLOR, who was a pre-trial detainee at the Peoria County Jail.

74.     That from October 6, 2014 through October 12, 2014 as a direct and proximate result of one or more of the aforesaid willful and wanton acts and/or omissions in deliberate disregard and indifference of each of the Defendants, SHERIFF, ASBELL, SHERIFF'S EMPLOYEES, CHCI, CCS, and NURSE, and/or their agents, servants, and/or employees, the Decedent, TYLOR, was deprived of his right to receive proper and adequate access to mental health treatment and medical care, access to NTP and opiate-addiction treatment and thereafter hung himself from his prison cell bed with a bed sheet thereby causing the Decedent, TYLOR, to sustain severe and permanent injuries resulting in his death on October 12, 2014.

75.     Further, that the Defendants, SHERIFF, ASBELL, SHERIFF'S EMPLOYEES, CHCI, CCS, and NURSE, were each deliberately indifference toward a known risk of suicide and/or attempt to commit suicide by the Decedent, TYLOR, as of October 10, 2014 and they failed to take any steps whatsoever to prevent the death of the Decedent, TYLOR, who was a pre-trial detainee at the Peoria County Jail, and who was known to each of the Defendants as being at serious risk of suicide and/or attempt at suicide.

76.     That as a direct and proximate result of one or more of the aforesaid willful and wanton acts and/or omissions in deliberate disregard and indifference of each of the Defendants,

SHERIFF, ASBELL, SHERIFF'S EMPLOYEES, CHCI, CCS, and NURSE, and/or their agents, servants, and/or employees, the Decedent, TYLOR, then and there sustained severe permanent injuries, both externally and internally, and was hindered and prevented from attending to his usual duties and affairs and has lost the value of that time as aforementioned.

77.     That the Decedent, TYLOR, also suffered great pain and anguish, both in mind and body prior to his death while in the custody and care of each of the Defendants, SHERIFF, ASBELL, SHERIFF'S EMPLOYEES, CHCI, CCS, and NURSE, and/or their agent, servants, and/or employees.

78.     That has a part of the duties of the Defendants, SHERIFF, ASBELL, and SHERIFF'S EMPLOYEES, cell checks are to be made on all inmates at least every fifteen (15) minutes.

79.     That on October 12, 2014 the Defendants, SHERIFF, ASBELL, and SHERIFF'S EMPLOYEES, did not make cell checks every fifteen (15) minutes.

80.     That on October 12, 2014, the Defendant, OFFICER ALEC MICHEL, was assigned to work on "F Pod" on 1st shift, and completed an inmate check at approximately 10:15 AM.

81.     That on October 12, 2014, at approximately 10:29 AM, the Defendant, OFFICER ALEC MICHEL, took his lunch break.  No additional inmate check was performed by the Defendant, OFFICER ALEC MICHEL, prior to going on his lunch break.

82.     That on October 12, 2014, the Defendant, OFFICER MICHAEL SMITH, was also on duty and in the guard station which included "F Pod".  That part of the duties of the Defendant, OFFICER MICHAEL SMITH, was to perform checks on the inmates and take care of inmate needs while the Defendant, OFFICER ALEC MICHEL, was at lunch.

83.    That on October 12, 2014, the Defendant, OFFICER MICHAEL SMITH, did not perform any checks on inmates while the Defendant, OFFICER ALEC MICHEL, was on lunch break.

84.    That when the Defendants, SHERIFF, ASBELL, and SHERIFF'S EMPLOYEES, take lunch or dinner breaks another officer must perform their checks on the inmates, and must take care of inmate needs while they are away.

85.    That on October 12, 2014 no one was checking on inmates and/or taking care of inmate needs while the Defendants, SHERIFF, ASBELL, and SHERIFF'S EMPLOYEES, were at lunch.

86.    That on October 12, 2014, no inmate checks were performed until the Defendant, OFFICER ALEC MICHEL, returned from his lunch break when the Defendant, OFFICER MICHAEL SMITH, went to perform a check at approximately 11:05 AM.

87.    That on October 12, 2014, the Decedent, TYLOR, committed suicide by hanging himself during one of the unsupervised, extended periods between checks by the Defendants, SHERIFF, ASBELL, and SHERIFF'S EMPLOYEES.

88.    That on October 12, 2014 from approximately 10:15 AM until approximately 11:05 AM no checks were performed by the Defendants, SHERIFF, ASBELL, and SHERIFF'S EMPLOYEES, on the inmates at the Peoria County Jail, including the Decedent, TYLOR.

89.    That on October 12, 2014, the Defendant, OFFICER STAN KESTER, was also working first shift at the Peoria County Jail, was a Department of Corrections Supervisor at the Peoria County Jail, and was present when the Decent, TYLOR, committed suicide by hanging himself in his cell.

90.     That CHCI and CCS knew at the time that they first saw the Decedent, TYLOR, on October 6, 2014 until they last saw him on October 10, 2014 that he had serious medical and mental health care needs.

91.     That CHCI and CCS knew at the time that they first saw the Decedent, TYLOR, on October 6, 2014 until they last saw him on October 10, 2014 that if they did not provide appropriate, adequate and effective care that the mental and physical health of the Decedent, TYLOR, would worsen.

92.     That all of the Defendants, SHERIFF, ASBELL, SHERIFF'S EMPLOYEES, CHCI, CCS, and NURSE, each knew that as a pre-trial detainee, the Decedent, TYLOR, had no other options for medical and mental health treatment, and that if they failed to provide appropriate, adequate and effective care that the Decedent, TYLOR, could not access any other treatment.

93.     That the Defendants, SHERIFF, ASBELL, CHCI, and CCS conducted regular audits and received reports on the conditions in the Peoria County Jail, and therefore they were well aware and informed that inmates and pre-trial detainees, including the Decedent, TYLOR, were not receiving minimally adequate physical and mental health care while incarcerated in the Peoria County Jail.

94.     That the Defendants, SHERIFF and ASBELL, were aware that there was not a sufficient mental health staff at the Peoria County Jail to address the mental health needs of inmates suffering from severe symptoms and self-destructive behaviors.

95.     That the Defendants, SHERIFF, ASBELL, CHCI, and CCS, each participated in budget meetings, and implemented budgeting plans that left mental health needs of inmates, including the Decedent, TYLOR, unmet.

96.     That further, the Defendants, SHERIFF, ASBELL, CHCI, and CCS, were aware that correctional staff, including the Defendants, SHERIFF'S EMPLOYEES and NURSE, were untrained and prone to ignoring inmates and pre-trial detainees with mental health problems, thereby frequently causing harm to inmates in their care and custody.

97.     That further, the Defendants, SHERIFF and ASBELL, were aware that correctional staff, including the Defendants, SHERIFF'S EMPLOYEES, were prone to ignore requirements and mandates concerning conducting cell checks and inmate checks every fifteen (15) minutes, especially when lunch, dinner, and/or other breaks would be interrupted by said mandated cell and inmate checks.

### COUNT I
**(Failure to Protect in Violation of the Fourteenth Amendment under 42 U.S.C. §1983)**
**(Defendant SHERIFF, Individual Capacity)**

1-97.   That the Plaintiff repeats and realleges, and incorporates by reference herein Paragraphs 1-97 of the Plaintiff's Complaint as and for Paragraphs 1 through 97 of this Count I with full force and effect as if pled here in full.

98.     That it is well settled under the authority of the United States Supreme Court, and in accordance with the Fourteenth Amendment, that the Decedent, TYLOR, was entitled to be free from a known and unreasonable risk of serious harm while he was a pre-trial detainee in the care and custody of the Defendant, SHERIFF, at the Peoria County Jail.

99.     That at all relevant and material times herein, the Decedent, TYLOR, had a constitutionally protected right under the Fourteenth Amendment to the U.S. Constitution to receive needed physical and mental health care while a pre-trial detainee in the Peoria County Jail, and to have his mental health issues and conditions timely, properly, and effectively assessed and treated.

100.    That the Defendant, SHERIFF, deliberately disregarded the immediate, known, and serious threats to the physical and mental health and well-being of persons in the Peoria County Jail, including the Decedent, TYLOR, who were in need of mental health treatment, and the Defendant, SHERIFF, exhibited a deliberate and callous indifference to the serious psychological and mental health needs, by denying access to intensive and structured mental health care, treatment, and observation necessary to treat serious mental health needs and prevent suffering and death of inmates, including the Decedent, TYLOR, who was a pre-trial detainee at the Peoria County Jail.

101.    That the Defendant, SHERIFF, was aware that there were inmates confined in the Peoria County Jail who suffered from severe mental health needs, who were suffering from drug and alcohol withdrawal, and who were at significant risk of suicide, and despite that knowledge the Defendant, SHERIFF, intentionally and knowingly failed to provide any serious, ongoing case management and treatment for such inmates, including the Decedent, TYLOR, and failed to regularly monitor the mental health and physical health needs of said inmates and pre-trial detainees.

102.    That the Defendant, SHERIFF, in violation of the Fourteenth Amendment, knew of, and disregarded a known substantial risk of serious harm and death to the Decedent, TYLOR, and that the Decedent, TYLOR, would likely commit, or attempt to commit suicide.  Further, the Defendant, SHERIFF, also knew that there was a substantial risk that mentally ill inmates, left substantially untreated, would attempt suicide, that the threat of inmate suicide was imminent and immediate, and that inmates at the Peoria County Jail were either: (i) provided with the means to accomplish suicide and suicide attempts; or (ii) that implements of suicide and suicide

attempts were not withdrawn and/or removed from the cells of inmates and pre-trial detainees at the Peoria County Jail who were at risk to attempt suicide.

103.     That under the Fourteenth Amendment the right(s) to due process, pretrial detainees are entitled to "at least as much, and probably more, protection" as convicted criminals under the Eighth Amendment.  *Forrest v. Prine*, 620 F.3d 739, 744 (7th Cir. 2010); *see also Belbachir v. City of McHenry*, 726 F.3d 975, 979 (7th Cir. 2013).

104.     That the aforesaid willful and wanton acts and/or omissions of the Defendant, SHERIFF, in deliberate disregard and indifference of the risk of danger, harm, and loss of life to the Decedent, TYLOR, was undertaken in disregard and deprivation of the constitutional rights of the Decedent, TYLOR.

105.     That as a direct and proximate result of the aforesaid willful and wanton acts and/or omissions of the Defendant, SHERIFF, in deliberate disregard and indifference of the risk of danger, harm, and loss of life to the Decedent, TYLOR, the decedent suffered pain, emotional distress, physical and mental injury, and ultimately death by suicide from hanging himself in his cell on October 12, 2014.

106.     That the aforesaid willful and wanton acts and/or omissions of the Defendant, SHERIFF, in deliberate disregard and indifference to the serious mental and physical health needs of the Decedent, TYLOR, and of the risk of danger, harm, and loss of life to the Decedent, TYLOR, were a direct and proximate cause of the Defendant, SHERIFF's, violations and deprivations of the constitutional rights of the Decedent, TYLOR, and thereby subject the Defendant, SHERIFF, to liability pursuant to 42 U.S.C. § 1983.

## COUNT II
### (Failure to Protect in Violation of the Fourteenth Amendment under 42 U.S.C. §1983)
### (Defendant ASBELL, Individual Capacity)

1-97.   That the Plaintiff repeats and realleges, and incorporates by reference herein Paragraphs 1-97 of the Plaintiff's Complaint as and for Paragraphs 1 through 97 of this Count II with full force and effect as if pled here in full.

98.    That it is well settled under the authority of the United States Supreme Court, and in accordance with the Fourteenth Amendment, that the Decedent, TYLOR, was entitled to be free from a known and unreasonable risk of serious harm while he was a pre-trial detainee in the care and custody of the Defendant, ASBELL, at the Peoria County Jail.

99.    That at all relevant and material times herein, the Decedent, TYLOR, had a constitutionally protected right under the Fourteenth Amendment to the U.S. Constitution to receive needed physical and mental health care while a pre-trial detainee in the Peoria County Jail, and to have his mental health issues and conditions timely, properly, and effectively assessed and treated.

100.    That the Defendant, ASBELL, deliberately disregarded the immediate, known, and serious threats to the physical and mental health and well-being of persons in the Peoria County Jail, including the Decedent, TYLOR, who were in need of mental health treatment, and the Defendant, ASBELL, exhibited a deliberate and callous indifference to the serious psychological and mental health needs, by denying access to intensive and structured mental health care, treatment, and observation necessary to treat serious mental health needs and prevent suffering and death of inmates, including the Decedent, TYLOR, who was a pre-trial detainee at the Peoria County Jail.

101.    That the Defendant, ASBELL, was aware that there were inmates confined in the Peoria County Jail who suffered from severe mental health needs, who were suffering from drug and alcohol withdrawal, and who were at significant risk of suicide, and despite that knowledge the Defendant, ASBELL, intentionally and knowingly failed to provide any serious, ongoing case management and treatment for such inmates, including the Decedent, TYLOR, and failed to regularly monitor the mental health and physical health needs of said inmates and pre-trial detainees.

102.    That the Defendant, ASBELL, in violation of the Fourteenth Amendment, knew of, and disregarded a known substantial risk of serious harm and death to the Decedent, TYLOR, and that the Decedent, TYLOR, would likely commit, or attempt to commit suicide.  Further, the Defendant, ASBELL, also knew that there was a substantial risk that mentally ill inmates, left substantially untreated, would attempt suicide, that the threat of inmate suicide was imminent and immediate, and that inmates at the Peoria County Jail were either: (i) provided with the means to accomplish suicide and suicide attempts; or (ii) that implements of suicide and suicide attempts were not withdrawn and/or removed from the cells of inmates and pre-trial detainees at the Peoria County Jail who were at risk to attempt suicide.

103.    That under the Fourteenth Amendment the right(s) to due process, pretrial detainees are entitled to "at least as much, and probably more, protection" as convicted criminals under the Eighth Amendment.  *Forrest v. Prine*, 620 F.3d 739, 744 (7th Cir. 2010); *see also Belbachir v. City of McHenry*, 726 F.3d 975, 979 (7th Cir. 2013).

104.    That the aforesaid willful and wanton acts and/or omissions of the Defendant, ASBELL, in deliberate disregard and indifference of the risk of danger, harm, and loss of life to

the Decedent, TYLOR, was undertaken in disregard and deprivation of the constitutional rights of the Decedent, TYLOR.

105.    That as a direct and proximate result of the aforesaid willful and wanton acts and/or omissions of the Defendant, ASBELL, in deliberate disregard and indifference of the risk of danger, harm, and loss of life to the Decedent, TYLOR, the decedent suffered pain, emotional distress, physical and mental injury, and ultimately death by suicide from hanging himself in his cell on October 12, 2014.

106.    That the aforesaid willful and wanton acts and/or omissions of the Defendant, ASBELL, in deliberate disregard and indifference to the serious mental and physical health needs of the Decedent, TYLOR, and of the risk of danger, harm, and loss of life to the Decedent, TYLOR, were a direct and proximate cause of the Defendant, ASBELL's, violations and deprivations of the constitutional rights of the Decedent, TYLOR, and thereby subject the Defendant, ASBELL, to liability pursuant to 42 U.S.C. § 1983.

<u>**COUNT III**</u>
**(Failure to Protect in Violation of the Fourteenth Amendment under 42 U.S.C. §1983)**
**(Defendants SHERIFF'S EMPLOYEES, Individual Capacities)**

1-97.    That the Plaintiff repeats and realleges, and incorporates by reference herein Paragraphs 1-97 of the Plaintiff's Complaint as and for Paragraphs 1 through 97 of this Count III with full force and effect as if pled here in full.

98.    That the Plaintiff is entitled to relief against the Defendants, SHERIFF'S EMPLOYEES, under 42 U.S.C. § 1983, based on violations of the Fourteenth Amendment to the U.S. Constitution.

99.    That it is well settled under the authority of the United States Supreme Court, and in accordance with the Fourteenth Amendment, that the Decedent, TYLOR, was entitled to be

free from a known and unreasonable risk of serious harm while he was a pre-trial detainee in the care and custody of the Defendants, SHERIFF'S EMPLOYEES, at the Peoria County Jail.

100.    That at all relevant and material times herein, the Decedent, TYLOR, had a constitutionally protected right under the Fourteenth Amendment to the U.S. Constitution to receive needed physical and mental health care while a pre-trial detainee in the Peoria County Jail, and to have his mental health issues and conditions timely, properly, and effectively assessed and treated.

101.    That the Defendants, SHERIFF'S EMPLOYEES, deliberately disregarded the immediate, known, and serious threats to the physical and mental health and well-being of persons in the Peoria County Jail, including the Decedent, TYLOR, who were in need of mental health treatment, and the Defendants, SHERIFF'S EMPLOYEES, exhibited a deliberate and callous indifference to the serious psychological and mental health needs, by denying access to intensive and structured mental health care, treatment, and observation necessary to treat serious mental health needs and prevent suffering and death of inmates, including the Decedent, TYLOR, who was a pre-trial detainee at the Peoria County Jail.

102.    That the Defendants, SHERIFF'S EMPLOYEES, were each aware that there were inmates confined in the Peoria County Jail who suffered from severe mental health needs, who were suffering from drug and alcohol withdrawal, and who were at significant risk of suicide, and despite that knowledge the Defendants, SHERIFF'S EMPLOYEES, each intentionally and knowingly failed to provide any serious, ongoing case management and treatment for such inmates, including the Decedent, TYLOR, and failed to regularly monitor the mental health and physical health needs of said inmates and pre-trial detainees.

103.    That each the Defendants, SHERIFF'S EMPLOYEES, in violation of the Fourteenth Amendment, knew of, and disregarded a known substantial risk of serious harm and death to the Decedent, TYLOR, and that the Decedent, TYLOR, would likely commit, or attempt to commit suicide.  Further, the Defendants, SHERIFF'S EMPLOYEES, also knew that there was a substantial risk that mentally ill inmates, left substantially untreated, would attempt suicide, that the threat of inmate suicide was imminent and immediate, and that inmates at the Peoria County Jail were either: (i) provided with the means to accomplish suicide and suicide attempts; or (ii) that implements of suicide and suicide attempts were not withdrawn and/or removed from the cells of inmates and pre-trial detainees at the Peoria County Jail who were at risk to attempt suicide.

104.    That under the Fourteenth Amendment the right(s) to due process, pretrial detainees are entitled to "at least as much, and probably more, protection" as convicted criminals under the Eighth Amendment.  *Forrest v. Prine*, 620 F.3d 739, 744 (7th Cir. 2010); *see also Belbachir v. City of McHenry*, 726 F.3d 975, 979 (7th Cir. 2013).

105.    That the aforesaid willful and wanton acts and/or omissions of each of the Defendants, SHERIFF'S EMPLOYEES, in deliberate disregard and indifference of the risk of danger, harm, and loss of life to the Decedent, TYLOR, was undertaken in disregard and deprivation of the constitutional rights of the Decedent, TYLOR.

106.    That as a direct and proximate result of the aforesaid willful and wanton acts and/or omissions of each of the Defendants, SHERIFF'S EMPLOYEES, in deliberate disregard and indifference of the risk of danger, harm, and loss of life to the Decedent, TYLOR, the decedent suffered pain, emotional distress, physical and mental injury, and ultimately death by suicide from hanging himself in his cell on October 12, 2014.

107.    That the aforesaid willful and wanton acts and/or omissions of each of the Defendants, SHERIFF'S EMPLOYEES, in deliberate disregard and indifference to the serious mental and physical health needs of the Decedent, TYLOR, and of the risk of danger, harm, and loss of life to the Decedent, TYLOR, were a direct and proximate cause of the Defendants, SHERIFF'S EMPLOYEES's, violations and deprivations of the constitutional rights of the Decedent, TYLOR, and thereby subject each of the Defendants, SHERIFF'S EMPLOYEES, to liability pursuant to 42 U.S.C. § 1983.

### COUNT IV
**(Failure to Protect in Violation of the Fourteenth Amendment under 42 U.S.C. §1983)**
**(Defendants CHCI, CCS, and NURSE, Individual Capacities)**

1-97.    That the Plaintiff repeats and realleges, and incorporates by reference herein Paragraphs 1-97 of the Plaintiff's Complaint as and for Paragraphs 1 through 97 of this Count IV with full force and effect as if pled here in full.

98.    That the Decedent, TYLOR, was a pre-trial detainee at the Peoria County Jail, and, as a person in custody, was in a special relationship with the Defendants, CHCI, CCS, and NURSE, within the meaning and protections of 42 U.S.C. § 1983 which prohibits any person acting under color of any statute, ordinance, regulation, custom, or usage of any State from subjecting any person in custody to the deprivation of any rights, privileges and/or immunities secured by the U.S. Constitution without due process of law.

99.    That the Defendants, CHCI, CCS, and NURSE, were acting under color of law, intentionally, and with conscious, callous, and deliberate indifference and deprived the Decedent, TYLOR, of his constitutional due process.

100.    That it is well settled under the authority of the United States Supreme Court, and in accordance with the Fourteenth Amendment, that the Decedent, TYLOR, was entitled to be

free from a known and unreasonable risk of serious harm while he was a pre-trial detainee in the care and custody of each of the Defendants, CHCI, CCS, and NURSE, at the Peoria County Jail.

101.    That at all relevant and material times herein, the Decedent, TYLOR, had a constitutionally protected right under the Fourteenth Amendment to the U.S. Constitution to receive needed physical and mental health care while a pre-trial detainee in the Peoria County Jail, and to have his mental health issues and conditions timely, properly, and effectively assessed and treated by each of the Defendants, CHCI, CCS, and NURSE, who had been contracted to provide said services.

102.    That each of the Defendants, CHCI, CCI, and NURSE, deliberately disregarded the immediate, known, and serious threats to the physical and mental health and well-being of persons in the Peoria County Jail, including the Decedent, TYLOR, who were in need of mental health treatment, and each of the Defendants, CHCI, CCI, and NURSE, exhibited a deliberate and callous indifference to the serious psychological and mental health needs, by denying access to intensive and structured mental health care, treatment, and observation necessary to treat serious mental health needs and prevent suffering and death of inmates, including the Decedent, TYLOR, who was a pre-trial detainee at the Peoria County Jail.

103.    That each of the Defendants, CHCI, CCI, and NURSE, were aware that there were inmates confined in the Peoria County Jail who suffered from severe mental health needs, who were suffering from drug and alcohol withdrawal, and who were at significant risk of suicide, and despite that knowledge each of the Defendants, CHCI, CCI, and NURSE, intentionally and knowingly failed to provide any serious, ongoing case management and treatment for such inmates, including the Decedent, TYLOR, failed to regularly monitor the mental health and physical health needs of said inmates and pre-trial detainees, regularly

discharged inmates from mental and physical medical care prematurely, regularly failed to provide adequate and effective drug and alcohol withdrawal screening, treatment and assessment, and regularly failed to provide adequate and effective suicide screening and assessment, and treatment for inmates who had attempted and/or who were known to contemplate attempting suicide.

104.    That each of the Defendants, CHCI, CCS, and NURSE, in violation of the Fourteenth Amendment, knew of, and disregarded a known substantial risk of serious harm and death to the Decedent, TYLOR, and that the Decedent, TYLOR, would likely commit, or attempt to commit suicide.  Further, each of the Defendants, CHCI, CCS, and NURSE, also knew that there was a substantial risk that mentally ill inmates, left substantially untreated, would attempt suicide, that the threat of inmate suicide was imminent and immediate, and that inmates at the Peoria County Jail were either: (i) provided with the means to accomplish suicide and suicide attempts; or (ii) that implements of suicide and suicide attempts were not withdrawn and/or removed from the cells of inmates and pre-trial detainees at the Peoria County Jail who were at risk to attempt suicide.

105.    That as medical practitioners and medical professionals, the Defendants, CHCI, CCS, and NURSE, have long been aware that failing to provide adequate, sufficient, effective, and timely medical treatment and services to pre-trial detainees experiencing serious and life-threatening substance abuse withdrawal symptoms is unconstitutional.  *Davis v. Carter*, 452 F. 3d 686 (7th Cir. 2006).

106.    That under the Fourteenth Amendment the right(s) to due process, pretrial detainees are entitled to "at least as much, and probably more, protection" as convicted criminals

under the Eighth Amendment. *Forrest v. Prine*, 620 F.3d 739, 744 (7th Cir. 2010); *see also Belbachir v. City of McHenry*, 726 F.3d 975, 979 (7th Cir. 2013).

107.    That the aforesaid willful and wanton acts and/or omissions of each of the Defendants, CHCI, CCS, and NURSE, in deliberate disregard and indifference of the risk of danger, harm, and loss of life to the Decedent, TYLOR, was undertaken in disregard and deprivation of the constitutional rights of the Decedent, TYLOR.

108.    That at no time during the Decedent, TYLOR's, stay at the Peoria County Jail was he provided with methadone as a part of the Decedent, TYLOR's, NTP.

109.    That each of the Defendants, CHCI, CCI, and NURSE, were contracted to provide twenty-four (24) hour medical services at the Peoria County Jail which included a mental and physical health examination upon intake and/or "booking".

110.    That if an inmate and/or pre-trial detainee informs any of the Defendants at the initial examination that they are taking methadone, or are participating in an NTP, each of the Defendants, CHCI, CCI, and NURSE, are supposed to, among other actions, are to complete a methadone referral card, and verify as soon as possible that its use is proper and documented.

111.    That verified prescription medications shall be administered by the Defendants, CHCI, CCI, and NURSE, within the time interval specified for administration of said medications, including, but not limited to methadone.

112.    That each of the Defendants, CHCI, CCI, and NURSE, failed to complete a methadone referral card for the Decedent, TYLOR, failed to timely verify his participation in an outpatient NTP methadone program, and failed to administer any methadone, and/or substantially equivalent medication to the Decedent, TYLOR, during his incarceration as a pre-

trial detainee at the Peoria County Jail from October 6, 2014 through his death by suicide on October 12, 2014.

113.    That as a direct and proximate result of the aforesaid willful and wanton acts and/or omissions of each of the Defendants, CHCI, CCS, and NURSE, in deliberate disregard and indifference of the risk of danger, harm, and loss of life to the Decedent, TYLOR, the decedent suffered pain, emotional distress, physical and mental injury, and ultimately death by suicide from hanging himself in his cell on October 12, 2014.

114.    That the aforesaid willful and wanton acts and/or omissions of each of the Defendants, CHCI, CCS, and NURSE, in deliberate disregard and indifference to the serious mental and physical health needs of the Decedent, TYLOR, and of the risk of danger, harm, and loss of life to the Decedent, TYLOR, were a direct and proximate cause of each of the Defendants, CHCI's, CCS's, and NURSE's, violations and deprivations of the constitutional rights of the Decedent, TYLOR, and thereby subject each of the Defendants, CHCI, CCS, and NURSE, to liability pursuant to 42 U.S.C. § 1983.

## COUNT V
### (42 U.S.C. § 1983, *Monell* Claim)
### (Defendants SHERIFF, ASBELL, and SHERIFF'S EMPLOYEES, Official Capacities)

1-97.    That the Plaintiff repeats and realleges, and incorporates by reference herein Paragraphs 1-97 of the Plaintiff's Complaint as and for Paragraphs 1 through 97 of this Count V with full force and effect as if pled here in full.

98.    That the Constitutional violations of each of the Defendants, SHERIFF, ASBELL, and SHERIFF'S EMPLOYEES, as outlined above were caused in part or in whole due to the systemic customs, policies, and widespread practices of each of the Defendants, SHERIFF, ASBELL, and SHERIFF'S EMPLOYEES, which fail to provide inmates and pre-trial detainees

at the Peoria County Jail who are suffering from mental health illness, and/or substance abuse withdrawal symptoms with adequate, proper, effective and timely evaluations and treatment, and/or access to evaluations and treatment thereby causing detainees to suffer both physically and emotionally.

99.     That the systemic customs, policies, and widespread practices of each of the Defendants, SHERIFF, ASBELL, and SHERIFF'S EMPLOYEES, by which each of the Defendants, SHERIFF, ASBELL, and SHERIFF'S EMPLOYEES, fail to provide and/or deny inmates and pre-trial detainees at the Peoria County Jail who are suffering from mental health illness, and/or substance abuse withdrawal symptoms with adequate, proper, effective and timely evaluations and treatment, and/or access to evaluations and treatment directly and proximately results in the Defendants, SHERIFF's, ASBELL's, and SHERIFF'S EMPLOYEES', failure to properly and adequately monitor such inmates and detainees, including the Decedent, TYLOR, so as to prevent the foreseeable risk that they will harm themselves, and/or attempt to harm themselves.

100.     That the systemic customs, policies, and widespread practices of each of the Defendants, SHERIFF, ASBELL, and SHERIFF'S EMPLOYEES, include, but are not limited to: (1) fostering an atmosphere at the Peoria County jail where correctional and medical personnel are permitted to ignore and/or disregard detainees who are "dope sick" or who are going through alcohol and/or drug withdrawal; (2) implementing practices that ensure failures to respond to the serious medical needs of detainees within a reasonable and effective time frame; (3) implementing practices wherein assessments and evaluations of a detainee's mental and physical condition are performed inadequately and/or are performed by unqualified persons; (4) implementing practices whereby detainees who are participating in methadone NTPs are denied

access to proper and effective medications and medical treatment, and are ignored and disregarded; (5) implementing practices whereby detainees are not properly and/or adequately monitored, checked, and/or supervised during personnel breaks, personnel lunch breaks, personnel dinner breaks, and/or personnel shift changes; (6) implementing practices which permit and/or encourage Peoria County Jail personnel to ignore and/or disregard detainees who are suffering from heroin and/or opioid addiction and withdrawal while incarcerated at the Peoria County Jail; (7) implementing practices at the Peoria County Jail whereby the medical treatment referrals are denied to detainees, including the Decedent, TYLOR, and/or whereby referrals for medical treatment and medical services are ignored in favor of placing detainees into the general population of the Peoria County Jail; and (8) implementing practices whereby Peoria County Jail personnel are permitted to ignore and/or disregard the suicide threats, suicidal ideations, and/or suicidal behaviors of detainees at the Peoria County Jail.

101.    That each of the Defendants, SHERIFF, ASBELL, and SHERIFF'S EMPLOYEES have long been aware that failing to provide adequate and timely treatment to detainees, failing to provide adequate and timely medications to detainees, and permitting suicidal detainees to be ignored and/or disregarded is an unconstitutional deprivation and a constitutes a constitutional injury to the Decedent, TYLOR.

102.    That as a direct and proximate result of the aforesaid willful and wanton acts and/or omissions of each of the Defendants, SHERIFF, ASBELL, and SHERIFF'S EMPLOYEES, in deliberate disregard and indifference of the risk of danger, harm, and loss of life to the Decedent, TYLOR, the decedent suffered pain, emotional distress, physical and mental injury, and ultimately death by suicide from hanging himself in his cell on October 12, 2014.

103.    That the aforesaid willful and wanton acts and/or omissions of each of the Defendants, SHERIFF, ASBELL, and SHERIFF'S EMPLOYEES, in deliberate disregard and indifference to the serious mental and physical health needs of the Decedent, TYLOR, and of the risk of danger, harm, and loss of life to the Decedent, TYLOR, were a direct and proximate cause of each of the Defendants, SHERIFF'S, ASBELL's, and SHERIFF'S EMPLOYEES's, violations and deprivations of the constitutional rights of the Decedent, TYLOR.

## COUNT VI
### (42 U.S.C. § 1983, *Monell* Claim)
### (Defendants CHCI and CCS, Official Capacities)

1-114.  That the Plaintiff repeats and realleges, and incorporates by reference herein Paragraphs 1-114 of Count IV of the Plaintiff's Complaint as and for Paragraphs 1 through 114 of this Count VI with full force and effect as if pled here in full.

115.    That the Constitutional violations of each of the Defendants, CHCI and CCS, as outlined above were caused in part or in whole due to the systemic customs, policies, and widespread practices of each of the Defendants, CHCI and CCS, which fail to provide inmates and pre-trial detainees at the Peoria County Jail who are suffering from mental health illness, and/or substance abuse withdrawal symptoms with adequate, proper, effective and timely evaluations and treatment, and/or access to evaluations and treatment thereby causing detainees to suffer both physically and emotionally.

116.    That the systemic customs, policies, and widespread practices of each of the Defendants, CHCI and CCS, by which each of the Defendants, CHCI and CCS, fail to provide and/or deny inmates and pre-trial detainees at the Peoria County Jail who are suffering from mental health illness, and/or substance abuse withdrawal symptoms with adequate, proper, effective and timely evaluations and treatment, and/or access to evaluations and treatment

37

directly and proximately results in the Defendants, CHCI's and CCS's, failure to properly and adequately monitor such inmates and detainees, including the Decedent, TYLOR, so as to prevent the foreseeable risk that they will harm themselves, and/or attempt to harm themselves.

117.    That the systemic customs, policies, and widespread practices of each of the Defendants, CHCI and CCS, include, but are not limited to: (1) fostering an atmosphere at the Peoria County jail where correctional and medical personnel are permitted to ignore and/or disregard detainees who are "dope sick" or who are going through alcohol and/or drug withdrawal; (2) implementing practices that ensure failures to respond to the serious medical needs of detainees within a reasonable and effective time frame; (3) implementing practices wherein assessments and evaluations of a detainee's mental and physical condition are performed inadequately and/or are performed by unqualified persons; (4) implementing practices whereby detainees who are participating in methadone NTPs are denied access to proper and effective medications and medical treatment, and are ignored and disregarded; (5) implementing practices whereby detainees are not properly and/or adequately monitored, checked, and/or supervised for deteriorating, and/or worsening physical and mental health conditions; (6) implementing practices which permit and/or encourage medical personnel to ignore and/or disregard detainees who are suffering from heroin and/or opioid addiction and withdrawal while incarcerated at the Peoria County Jail; (7) implementing practices at the Peoria County Jail for medical personnel whereby medical treatment referrals are denied to detainees, including the Decedent, TYLOR, and/or whereby referrals for medical treatment and medical services are ignored in favor of placing detainees into the general population of the Peoria County Jail; (8) implementing practices whereby Peoria County Jail medical personnel are permitted to ignore and/or disregard the suicide threats, suicidal ideations, and/or suicidal behaviors of detainees at

the Peoria County Jail; (9) implemented practices wherein contracts between the Defendants,

CHCI and CCS, and the Defendants, SHERIFF and PEORIA COUNTY, for medical and mental

health services provide financial incentives to the Defendants, CHCI and CCS, for providing

sub-standard medical and mental health services to detainees who suffer from mental illness,

and/or drug and/or alcohol withdrawal while incarcerated as a detainee at the Peoria County Jail;

and (10) implemented practices, customs, and policies for medical personnel at the Peoria

County Jail which by design minimizes the amount of medical services provided to detainees,

and limits access to adequate and property physical and mental health services and treatment for

detainees.

118.    That each of the Defendants, CHCI and CCS, have long been aware that failing to

provide adequate and timely treatment to detainees, failing to provide adequate and timely

medications to detainees, and permitting suicidal detainees to be ignored and/or disregarded is an

unconstitutional deprivation and a constitutes a constitutional injury to the Decedent, TYLOR.

119.    That as a direct and proximate result of the aforesaid willful and wanton acts

and/or omissions of each of the Defendants, CHCI and CCS, in deliberate disregard and

indifference of the risk of danger, harm, and loss of life to the Decedent, TYLOR, the decedent

suffered pain, emotional distress, physical and mental injury, and ultimately death by suicide

from hanging himself in his cell on October 12, 2014.

120.    That the aforesaid willful and wanton acts and/or omissions of each of the

Defendants, CHCI and CCS, in deliberate disregard and indifference to the serious mental and

physical health needs of the Decedent, TYLOR, and of the risk of danger, harm, and loss of life

to the Decedent, TYLOR, were a direct and proximate cause of each of the Defendants, CHCI's

and CCS's, violations and deprivations of the constitutional rights of the Decedent, TYLOR.

## COUNT VII
### (Americans With Disabilities Act ("ADA") – 42 U.S.C. § 12132)
### (Defendants SHERIFF and ASBELL in Official Capacities)

1-97.    That the Plaintiff repeats and realleges, and incorporates by reference herein Paragraphs 1-97 of the Plaintiff's Complaint as and for Paragraphs 1 through 97 of this Count VII with full force and effect as if pled here in full.

98.    That the Decedent, TYLOR, was a recovering opioid-addict, and at all relevant times herein was a qualified person with a disability under the ADA, and his disability was known to the Defendants, SHERIFF and ASBELL, through his numerous incarcerations at the Peoria County Jail.

99.    That as a result of the aforesaid circumstances, the Defendants, SHERIFF and ASBELL, had an obligation to accommodate his disability by housing him in a suitable, proper, and adequate suicide-proof cell.

100.    That the Defendants, SHERIFF and ASBELL, deliberately and intentionally disregarded the disabilities of the Decedent, TYLOR, and failed to accommodate the disabilities of the Decedent, TYLOR.

101.    That the deliberate, and intentional failures of the Defendants, SHERIFF and ASBELL, to recognize and accommodate the disabilities of the Decedent, TYLOR, was a direct and proximate cause of the death of the Decedent, TYLOR, thereby subjecting the Defendants, SHERIFF and ASBELL, to liability under the ADA.

## COUNT VIII
### (Illinois Wrongful Death Claim)
### (Defendants CHCI, CCS, and NURSE)

1-120.  That the Plaintiff repeats and realleges, and incorporates by reference herein Paragraphs 1-114 of Count VI of the Plaintiff's Complaint as and for Paragraphs 1 through 120 of this Count VIII with full force and effect as if pled here in full.

121.    That the Defendants, CHCI, CCS, and NURSE, each owed a duty of care to the Decedent, TYLOR, while he was a pre-trial detainee at the Peoria County Jail.

122.    That the Defendants, CHCI, CCS, and NURSE, had contracted, and agreed to provide physical and mental health evaluations, screenings, and physical and mental health treatment and services to pre-trial detainees, including the Decedent, TYLOR, at the Peoria County Jail.

123.    That the Defendants, CHCI, CCS, and NURSE, each breached their duties of care owing to the Decedent, TYLOR, by willfully and wantonly committing one or more of the following acts and/or omissions: (1) fostering an atmosphere at the Peoria County jail where correctional and medical personnel are permitted to ignore and/or disregard detainees who are "dope sick" or who are going through alcohol and/or drug withdrawal; (2) implementing practices that ensure failures to respond to the serious medical needs of detainees within a reasonable and effective time frame; (3) implementing practices wherein assessments and evaluations of a detainee's mental and physical condition are performed inadequately and/or are performed by unqualified persons; (4) implementing practices whereby detainees who are participating in methadone NTPs are denied access to proper and effective medications and medical treatment, and are ignored and disregarded; (5) implementing practices whereby detainees are not properly and/or adequately monitored, checked, and/or supervised for

41

deteriorating, and/or worsening physical and mental health conditions; (6) implementing practices which permit and/or encourage medical personnel to ignore and/or disregard detainees who are suffering from heroin and/or opioid addiction and withdrawal while incarcerated at the Peoria County Jail; (7) implementing practices at the Peoria County Jail for medical personnel whereby medical treatment referrals are denied to detainees, including the Decedent, TYLOR, and/or whereby referrals for medical treatment and medical services are ignored in favor of placing detainees into the general population of the Peoria County Jail; (8) implementing practices whereby Peoria County Jail medical personnel are permitted to ignore and/or disregard the suicide threats, suicidal ideations, and/or suicidal behaviors of detainees at the Peoria County Jail; (9) implemented practices wherein contracts between the Defendants, CHCI and CCS, and the Defendants, SHERIFF and PEORIA COUNTY, for medical and mental health services provide financial incentives to the Defendants, CHCI and CCS, for providing sub-standard medical and mental health services to detainees who suffer from mental illness, and/or drug and/or alcohol withdrawal while incarcerated as a detainee at the Peoria County Jail; and (10) implemented practices, customs, and policies for medical personnel at the Peoria County Jail which by design minimizes the amount of medical services provided to detainees, and limits access to adequate and property physical and mental health services and treatment for detainees.

124.    That the Defendants, CHCI, CCS, and NURSE, knew or should have reasonably known that the Decedent, TYLOR, was a high suicide risk, and despite such apparent risk each of the Defendants, CHCI, CCS, and NURSE, failed to properly and adequately supervise, monitor, and observe the Decedent, TYLOR.

125.    That the Defendants, CHCI, CCS, and NURSE, knew or should have reasonably known that the Decedent, TYLOR, was a high suicide risk, and despite such apparent risk each

of the Defendants failed to remove and/or adequately and properly ensure the removal of dangerous and/or foreseeably dangerous items, and effects from the prison cell of the Decedent, TYLOR, thereby providing the means for the decedent to cause great bodily harm and death to himself.

126.    That each of the acts and/or omissions of the Defendants, CHCI, CCS, and NURSE, as aforesaid was a breach of the duties of care then and there owing to the Decedent, TYLOR, and each was a direct and proximate cause of the death of the Decedent, TYLOR, on October 12, 2014 and of the injuries to the heirs of the decedent.

127.    That the next-of-kin and corresponding relationship to the decedent are as follows: Breann DeWeese, Christina Thompson and Michelle Thompson, Sisters; David Young, Travis Young, Robyn Thompson and Ricky Crique, Jr., Brothers; Jason Young, Father; and Shannon DeWeese, Mother.

128.    That as a direct and proximate result of one or more of the aforesaid willful and wanton acts and/or omissions in reckless and/or deliberate disregard and utter indifference of Defendants, CHCI, CCS, and NURSE, and/or their agents, servants, and/or employees, and due to the consequent death of the Decedent, TYLOR, the next-of-kin of the decedent have suffered great losses both personal and pecuniary in nature, including loss of love, affection, guidance, companionship, and society of the Decedent, TYLOR, as a result of his death, subjecting each of the Defendants, and/or their agents, servants, and/or employees, to liability pursuant to 740 ILCS 180/1 which is more commonly known as the Wrongful Death Act.

## COUNT IX
### (Indemnification)
### (Defendant PEORIA COUNTY)

1-103.  That the Plaintiff repeats and realleges, and incorporates by reference herein Paragraphs 1-103 of Count V of the Plaintiff's Complaint as and for Paragraphs 1 through 103 of this Count IX with full force and effect as if pled here in full.

104.    That the Defendant, PEORIA COUNTY, is a county of the State of Illinois, a local governmental entity in the State of Illinois, and owns the Peoria County Jail which is a municipal jail existing under the laws of the State of Illinois.

105.    That the Defendant, PEORIA COUNTY, is sued as a necessary party to this action in that this action is seeking damages from the Co-Defendants, SHERIFF, ASBELL, and SHERIFF'S EMPLOYEES, in their official capacities, because the Co-Defendant, SHERIFF, is an independently elected county official, and because PEORIA COUNTY must indemnify the Co-Defendants, SHERIFF, ASBELL, and SHERIFF'S EMPLOYEES, for any judgment entered against the county sheriff and/or his employees in an official capacity.

106.    That the acts and/or omissions alleged above against the Co-Defendants, SHERIFF, ASBELL, and SHERIFF'S EMPLOYEES, were committed within the scope of their employment and/or while acting as agents of the Defendant, SHERIFF.

107.    That the acts and/or omissions alleged above against the Co-Defendants, SHERIFF, ASBELL, and SHERIFF'S EMPLOYEES, were committed under color of law and were deprivations of constitutional rights of the Decedent, TYLOR, while he was a pre-trial detainee at the Peoria County Jail.

108.    That the Defendant, PEORIA COUNTY, is required to provide indemnity within the meaning of 55 ILCS 5/5-1002, 745 ILCS 10/9-102, and other applicable laws and ordinances

for all actual damages caused by the Defendants, SHERIFF, ASBELL, and SHERIFF'S EMPLOYEES, while acting within the scope of their employment, within their authorized powers, and/or while acting under color of law whether in their individual and/or official capacities.

**<u>REQUEST AND PRAYER FOR RELIEF</u>**

WHEREFORE, the Plaintiff, JASON YOUNG, as Administrator of the Estate of TYLOR D. YOUNG, Deceased, hereby prays that this Court enter judgment in his favor and against the Defendants, awarding compensatory damages, costs and attorneys' fees, pre- and post- judgment interest, and other such further and additional relief as this Court may deem just and appropriate under the circumstances.

Dated: September 15, 2017

> Respectfully submitted,
>
> JASON YOUNG, as Administrator of
> The Estate of TYLOR D. YOUNG,
> Plaintiff
>
> By:      /s/ Jason B. McGary_____
>          One of the Attorneys for Plaintiff

Jason B. McGary ARDC # 6288405
Strong Law Offices
3100 N. Knoxville Avenue
Peoria, Illinois 61603
(309) 688-5297
Fax: (309) 688-5340
jason@stronglawoffices.com

## **CERTIFICATE OF SERVICE**

I, Jason B. McGary, hereby certify that a copy of the foregoing was electronically filed

with the Clerk of the Court using the CM/ECF system on this 15th day of September, 2017,

which will send notification of such filing to the following counsel of record:

Jennifer L. Morris
Benedict G. Ciravolo
Assistant State's Attorney
PEORIA COUNTY STATE'S ATTORNEY'S OFFICE
Peoria County Courthouse
324 Main Street, Room 111
Peoria, IL 61602
jmorris@peoriacounty.org
bciravolo@peoriacounty.org

John P. Heil, Jr.
Nathan R. Bach
Syed E. Ahmad
Heyl Royster Voelker & Allen
P.O. Box 6199
Peoria, IL 61601-6199
jheil@heylroyster.com
nbach@heylroyster.com
sahmad@heylroyster.com

/s/ Jason B. McGary
Jason B. McGary, ARDC No.:  6288405
**STRONG LAW OFFICES**
3100 N. Knoxville Avenue
Peoria, IL 61603
(309) 688-5297
jason@stronglawoffices.com