# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

JASON YOUNG, *as Administrator of the* )
*Estate of Tyler. D. Young, Deceased*, )
                                 )
    Plaintiff, )
                                 )     Case No.   1:16-cv-01367-JBM
      v. )
                                   )
PEORIA COUNTY, ILLINOIS, )
MICHEAL MCCOY, *Peoria County* )
*Sheriff*, BRIAN ASBELL, *Corrections* )
*Superintendent*, MORGAN HANSE, )
ALEC MICHEL, MICHAEL SMITH, )
STAN KESTER, OLIVIA RADCLIFF- )
TISH, CORRECTIONAL HEALTHCARE )
COMPANIES, CORRECT CARE )
SOLUTIONS, LLC. )
                                   )
    Respondents. )

## <u>ORDER & OPINION</u>

The matter is before the Court on Motions to Dismiss the Second Amended Complaint filed by Olivia Radcliff-Tish, Correctional Healthcare Companies, Inc., and Correct Care Solutions, Inc. (the "Medical Defendants") (Doc. 34) and Corrections Superintendent Brian Asbell, Morgan Hanse, Stan Kester, Peoria County Sheriff Michael McCoy, Alec Michel, Michael Smith, and Peoria County (the "Correctional Defendants") (Doc. 42). The motions have been fully briefed. For the reasons stated below, both motions are GRANTED in part and DENIED in part.

### BACKGROUND

On October 12, 2014, the decedent, Tylor Young, committed suicide in his jail cell at Peoria County Jail (the "Jail") (Doc. 31, ¶ 5). On September 30, 2016, Plaintiff Jason Young, as the administrator of Tylor Young's estate, filed the instant civil rights suit against Peoria County, Peoria County Sheriff Michael McCoy, Corrections Superintendent Brian Asbell, Officer Morgan Hanse, Officer Alex Michel, Officer Michael Smith, and Officer Stan Kester (collectively referred to as the "Correctional Defendants"), Correctional Healthcare Companies ("CHC"), Correct Care Solutions, LLC ("CCS"), and Nurse Olivia Radcliff-Tish (collectively referred to as the "Medical Defendants").

The following facts are taken from Plaintiff's second amended complaint[1] and are assumed to be true for purposes of these motions to dismiss. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). On October 6, 2014, Young was booked into the Jail on a charge of failure to appear. (Doc. 31, ¶ 25). Prior to and at the time of his arrest, Young was struggling with heroin addiction, asthma, depression, anxiety, and other mental health issues. *Id.* ¶ 26. Upon arrival at the Jail on October 6, 2014, Young was examined and evaluated. *Id.* ¶ 30. Young was identified as suffering from heroin abuse, opioid withdrawal, asthma, mental health problems, and he was deemed a suicide risk and a medical alert as a pre-trial detainee. *Id.* ¶¶ 30, 36, 38. At

---

[1] On August 30, 2017, this Court issued an Order & Opinion granting the Medical Defendants' Motion to Dismiss the First Amended Complaint and granting in part and denying in part the Correctional Defendants' Motion to Dismiss the First Amended Complaint. (Doc. 30). The Court found that Plaintiff's First Amended Complaint failed to plead enough information to state a section 1983 claim against all Defendants, but gave Plaintiff 21 days to amend. *Id.* at 8-11. The Court further dismissed Plaintiff's ADA claims against the individual defendants, but allowed Plaintiff's ADA claim against the Peoria County Sheriff. *Id.* at 11-14. The Court further held that Plaintiff's Illinois wrongful death claim against the Correctional Defendants was untimely, and that Plaintiff failed to plead enough information to state a wrongful death claim against the Medical Defendants (though such a claim was timely). *Id.* at 14-16. On September 15, 2017, Plaintiff filed his second amended complaint, and these motions to dismiss ensued.

that time, Young was participating in a Narcotic Treatment Program ("NTP") and taking methadone daily as part of his treatment. *Id.* at ¶¶ 30-31. Young was exhibiting severe symptoms of opioid withdrawal including nausea, vomiting, and sweats. *Id.* ¶ 31.

Notwithstanding Young's evaluation at booking, he was placed into the Jail's general population, in a section called the "F-Pod." *Id.* ¶ 53. The "F-Pod" did not have suicide-proof cells and did not allow for adequate supervision of "at-risk" inmates like Young. *Id.* ¶ 54. After booking and through his stay at the Jail, Young was denied access to or was not given methadone despite exhibiting withdrawal symptoms and severe mental distress. *Id.* ¶ 46.

On October 10, 2014, the Medical Defendants discharged Young from observation despite knowing that he was not receiving methadone treatment for his opioid addiction, and having observed that Young was exhibiting withdrawal symptoms, verbal and non-verbal behaviors and other characteristics associated with mental illness and distress including anxiety, appetite change, and refusal to communicate or cooperate with Defendants. *Id.* ¶¶ 47, 50. That same day, Young placed a recorded phone call to his grandparents during which he expressed his intent to kill himself if they did not bond him out of Jail. *Id.* ¶ 48.

Officers at the Jail are required to make cell checks on all inmates at least every fifteen minutes. *Id.* ¶ 79. On October 12, 2014, Officer Michel was assigned to work on "F-Pod's" first shift. *Id.* ¶ 80. He completed an inmate check at 10:15 A.M. *Id.* At approximately 10:29 A.M., Officer Michel took his lunch break; he did not

perform another inmate check before taking his lunch break. *Id.* ¶ 81. Officer Smith was also on duty and in the guard station that covered "F-Pod." *Id.* ¶ 82. Officer Smith did not perform an inmate check while Officer Michel at was lunch. *Id.* ¶ 83. When Officer Michel returned from lunch, Officer Smith went to perform an inmate check at 11:05 A.M. *Id.* ¶ 86. At that time, Young was found to have committed suicide by hanging in his cell. *Id.* ¶ 87.

Counts I-IV of the second amended complaint allege individual-capacity deliberate indifference claims pursuant to 42 U.S.C. § 1983 against Sheriff McCoy, Superintendent Asbell, the Sheriff's Employees, and the Medical Defendants. Counts V and VI allege official-capacity *Monell* claims against Sheriff McCoy, Superintendent Asbell, the Sheriff's Employees, CHC and CCS. Count VII alleges violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, by Sheriff McCoy and Superintendent Asbell. Count VIII alleges Illinois Wrongful Death claims against the Medical Defendants, and Count IX alleges indemnification against Peoria County.

On October 9, 2017, the Medical Defendants filed a motion to dismiss, and on November 13, 2017, the Correctional Defendants did the same. Plaintiff has responded to both motions, and this matter is ripe for decision.

## LEGAL STANDARD

In ruling on a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), "the court must treat all well-pleaded allegations as true and draw all inferences in favor of the non-moving party." *In re marchFIRST*

*Inc.*, 589 F.3d 901, 904 (7th Cir. 2009). The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient detail to give defendant notice of the claim, and the allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The plausibility standard requires enough facts to "present a story that holds together," but does not require a determination of probability. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Though detailed factual allegations are not needed, a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## DISCUSSION

The Medical Defendants argue that Plaintiff has failed to state a claim against them under § 1983, *Monell*, or the Illinois Wrongful Death Act. The Correctional Defendants also argue that Plaintiff has failed to state a claim against them under § 1983 and *Monell*. The Correctional Defendants also argue that Plaintiff has failed to state a claim under the ADA against Superintendent Asbell, and that Plaintiff's § 1983 claims are barred by the Illinois Tort Immunity Act and the statute of limitations.

## I.  Plaintiff's Individual-Capacity Section 1983 Claims

Plaintiff purports to bring individual-capacity § 1983 claims against the Nurse Radcliff-Tish, CCS, CHC, Sheriff McCoy, Superintendent Asbell, and Officers Hanse, Kester, Smith, and Michel.

Section 1983 imposes liability when a defendant acts under color of state law and violates a plaintiff's rights under the Constitution or laws of the United States. 42 U.S.C. § 1983. "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir.1996), *cert. denied*, 520 U.S. 1230 (1997) (quoting *Sheik–Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir.1994), *cert. denied*, 513 U.S. 1128 (1995)). Medical providers who contract with jails to perform the public function of providing medical services to inmates are treated the same as municipalities for liability purposes of a § 1983 claim. *Minix v. Canarecci*, 597 F.3d 824, 832 (7th Cir. 2010). As such, there is no question that CHC, CCS, and nurse Radcliff-Tish are state actors for purposes of this case. Furthermore, it is undisputed that the individual Correctional Defendants were acting in their capacities as state actors. The only issue, then, is whether Young was sufficiently pleaded that he was deprived by the defendants of a right or an interest secured by the Constitution.

It is well established that, while in the custody of state or local authorities, a pretrial detainee must be afforded certain protections under the Fourteenth Amendment, including access to adequate medical care. *See City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983); *Payne for Hicks v. Churchich*,

161 F.3d 1030, 1040-41 (7th Cir. 1998). "The Due Process Clause of the Fourteenth Amendment prohibits 'deliberate indifference to the serious medical needs of pretrial detainees.'" *Pittman* ex rel. *Hamilton v. Cty. of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014) (quoting *Brownell v. Figel*, 950 F.2d 1285, 1289 (7th Cir. 1991)). A plaintiff claiming a constitutional violation under § 1983 for denial of medical care must meet two requirements. "First, he must show that his medical condition was objectively serious." *Id.* "Second, the plaintiff must show that the defendant officials had a sufficiently culpable state of mind—that their 'acts or omissions [were] sufficiently harmful to evidence deliberate indifference' to his serious medical needs." *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The Seventh Circuit has held that suicide qualifies as a serious medical condition. *See id.*; *Collins v. Seeman,* 462 F.3d 757, 760 (7th Cir.2006); *Cavalieri v. Shepard*, 321 F.3d 616, 623 (7th Cir. 2003); *see also Foelker v. Outagamie County*, 394 F.3d 510, 511-13 (7th Cir. 2005) (finding that inmate who suffered from severe methadone withdrawal symptoms had a serious medical need). The remaining issue is whether Plaintiff has alleged the requisite state of mind on behalf of the individual defendants.

"Suicide is a 'serious harm' and prison officials must take reasonable preventative steps when they are aware that there is a substantial risk that an inmate may attempt to take his own life." *Estate of Novack* ex rel. *Turbin v. County of Wood*, 226 F.3d 525, 529 (7th Cir. 2000). "Deliberate indifference to a risk of suicide is present when an official is subjectively 'aware of the significant likelihood that an inmate may imminently seek to take his own life' yet 'fail[s] to take reasonable steps

to prevent the inmate from performing the act.'" *Id.* (quoting *Collins*, 462 F.3d at 761). An official must be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and the official "must also draw the inference." *Higgins v. Corr. Med. Servs. of Ill., Inc.*, 178 F.3d 508, 511 (7th Cir.1999) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "Circumstantial evidence can be used to establish subjective awareness and deliberate indifference." *Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 302 (7th Cir. 2010); *see Dixon v. County of Cook*, 819 F.3d 343, 350 (7th Cir. 2016) (when parties argue over the subjective element of a plaintiff's deliberate indifference claim, "close calls" should be decided in the plaintiff's favor at the pleading stage).

### a. Plaintiff Has Pleaded a Cognizable Individual-Capacity § 1983 Claim Against Nurse Radcliff-Tish

The Medical Defendants argue that Plaintiff's § 1983 claims against nurse Radcliff-Tish are too general and that Plaintiff fails to plead actual knowledge and intentional disregard of a known risk by nurse Radcliff-Tish. They further argue that CHC and CCS as entities cannot be sued in their individual capacity under § 1983.

Plaintiff alleges that nurse Radcliff-Tish was responsible for providing, and did provide, mental and physical evaluations to Young while he was incarcerated from October 6 to October 12, 2014 (personal involvement) (Doc. 31, ¶ 21). Plaintiff states that nurse Radcliff-Tish knew that Young was a "repeat" offender, that he had been on "suicide watch" during previous incarcerations, that he was at a higher risk for suicide and for exhibiting opioid withdrawal symptoms, that he was a heroin addict and was being treated for addiction with methadone daily, and that she witnessed

him exhibiting signs of mental distress and severe withdrawal symptoms between October 6 and October 10 (subjective knowledge of the significant likelihood that Young may harm himself) (Doc. 31, ¶¶ 40-41). Plaintiff further claims that nurse Radcliff-Tish denied Young methadone treatment and discharged him from care on October 10 with no further instruction, despite her knowledge that he was previously on suicide watch and despite Young exhibiting signs of withdrawal symptoms, mental distress, verbal and non-verbal behaviors, anxiety, appetite change, and refusal to cooperate or communicate with defendants between October 6 and October 9, thereby exhibiting deliberate indifference to his medical needs (deliberate indifference) (Doc. 31, ¶¶ 46, 50, 72).

While the Court makes no prediction about the ultimate merit of Plaintiff's claim against nurse Radcliff-Tish, the Court finds that "it is one that deserves at least the development that summary judgment would permit." *See Dixon*, 819 F.3d at 350 (7th Cir. 2016) (allegations that doctor knew about prisoner's chest tumor yet offered him only non-prescription pain medication, and discharged him from the jail's hospital were enough to state deliberate indifference claim); *Thomas*, 604 F.3d at 301-02 (finding deliberate indifference based on prison officials ignoring an inmate's visible symptoms of serious illness); *McIntosh v. Wexford Health Sources, Inc.*, 17-103, 2017 WL 1067782, *5 (S.D. Ill. Mar. 21, 2017) (plaintiff stated deliberate indifference claim in jail suicide case where he alleged that defendant was aware that plaintiff had been deemed a suicide risk in the past). At this stage of the litigation,

Plaintiff's second amended complaint plausibly alleges a deliberate indifference claim against nurse Radcliff-Tish.

Plaintiff's second amended complaint purports to bring a deliberate indifference claim against CHC and CCS in their individual capacities, as well. *Monell v. Department of Social Services*, 436 U.S. 658 (1978), permits suits against municipal entities under § 1983, "but only when a governmental policy or custom caused the constitutional deprivation; municipal entities cannot be liable for their employees' actions under a respondeat superior theory." *Hahn v. Walsh*, 762 F.3d 617, 638-39 (7th Cir. 2014). To the extent Plaintiff attempts to hold CHC and CCS vicariously liable for the conduct of nurse Radcliff-Tish, that claim is DISMISSED WITH PREJUDICE.

### b. Plaintiff Has Pleaded a Cognizable Individual-Capacity § 1983 Claim Against Sheriff McCoy and Superintendent Asbell

The Correctional Defendants concede that Plaintiff has alleged deliberate indifference, but argue that Plaintiff has failed to plead personal responsibility by the Correctional Defendants. Plaintiff brings individual-capacity § 1983 claims against the Sheriff, Superintendent, and Officers Michel, Smith, Kester, and Hanse.

Plaintiff has not stated an individual-capacity § 1983 claim against Officers Michel, Smith, Kester, and Hanse. Plaintiff makes no allegations that Officers Michel, Smith, or Kester *knew* that Young suffered from mental health issues or that he was a suicide risk. Plaintiff does not allege that those officers saw Young exhibit signs of opioid withdrawal and mental distress. The deliberate indifference standard is a subjective one, and it requires that a single prison official know of and disregard

a substantial risk of serious harm. *Estate of Novack*, 226 F.3d at 529. Plaintiff makes general allegations that the "Sheriff's Employees" knew and observed such information, however, this is insufficient to state an individual-capacity § 1983 claim for deliberate indifference. *See Johansen v. Curran*, No. 15-2376, 2016 WL 2644863, *4 (N.D. Ill. May 10, 2016) (collectively referring to individual defendants as "correctional officers" fails to illustrate how *each* individual defendant caused or participated in the alleged constitutional deprivation). There are simply no allegations that Officers Michel, Kester, and Smith were each personally cognizant that Young may imminently take his own life.

On the flip side, Plaintiff alleges that Officer Hanse was "present" in booking on October 6, 2014, when Young was evaluated, and that Officer Hanse knew that Young was suffering from drug addiction and mental health problems, but Plaintiff does not plead any further personal involvement on Officer Hanse's part. *Id.* ¶¶ 37, 39. For example, Plaintiff does not allege that Officer Hanse was responsible for making cell checks on Young or that Officer Hanse in any way participated in Young's care after booking. Plaintiff has therefore failed to state an individual-capacity claim against Officer Hanse, as well.

Plaintiff does allege enough to state individual-capacity § 1983 claims against Sheriff McCoy and Superintendent Asbell. Section 1983 "does not allow actions against individuals merely for their supervisory role of others". *Zimmerman v. Tribble*, 226 F.3d 568, 574 (7th Cir. 2000). Although, direct participation is not necessary; a plaintiff shows the requisite personal involvement by showing that the

Sheriff (or Superintendent) acquiesced in some demonstrable way in the alleged constitutional violation. *Kelly v. Mun. Courts of Marion County*, 97 F.3d 902, 909 (7th Cir. 1996). Plaintiff must show that Sheriff McCoy and Superintendent Asbell "actually knew" that Young was assigned to "F Pod" and that the Sheriff and Superintendent "inferred from that assignment that there was a substantial risk of serious harm" to Young. *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003). In other words, supervisors may held be liable under § 1983 if they "know about the unconstitutional conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *T.E. v. Grindle*, 599 F.3d 583, 588 (7th Cir.2010).

Here, Plaintiff alleges that at the time of booking, the Sheriff and Superintendent knew that Young was a higher risk of suicide and for exhibiting opioid withdrawal symptoms (Doc. 31, ¶ 40); that they knew that Young was a "repeat" pre-trial detainee and that he had been on suicide watch during prior incarcerations at the Jail (*Id.* ¶41); that they denied Young access to methadone and mental health treatment despite observing Young exhibit signs of withdrawal and severe mental distress between October 6 and October 9 (*Id.* ¶ 46); that they recorded a phone call Young made to his grandparents on October 10, wherein Young expressed his intent to kill himself (*Id.* ¶ 49); that they failed to remove dangerous items from Young's cell and failed to place Young in a suicide proof cell (*Id.* ¶ 64); and that they knew correctional staff, including the individual defendants, were prone to ignore requirements concerning conducting cell checks in general-population cells

every fifteen minutes. *Id.* ¶ 97. Young in fact committed suicide when forty-five minutes lapsed without him being checked on.

At this stage in the litigation, the Court assumes, as it must, the truth of the allegations concerning the Sheriff's and Superintendent's alleged knowledge, acts, and omissions. It is reasonable to infer from the allegations that by placing Young in general population, and keeping him there, despite (1) knowing that Young suffered from heroin addiction and depression, and that Young had previously been placed on suicide watch; (2) observing Young exhibit signs of opioid withdrawal and mental distress over the course of several days; (3) recording a phone call wherein Young expressed his intent to kill himself; and (4) knowing that officers often fail to make regular cell checks, Sheriff McCoy and Superintendent Asbell had knowledge that Young's serious medical needs would not be met. *See Farmer*, 511 U.S. at 842 (explaining that a prison official acts with "deliberate indifference" if "the official acted or failed to act despite his knowledge of a substantial risk of serious harm"); *Sivard v. Pulaski County*, 959 F.2d 662, 669 (7th Cir. 1992) (it was sufficient that plaintiff stated that the Sheriff "knew of [defendant's] wrongful detention and continued to detain him in spite of that knowledge); *Liska v. Dart*, 60 F.Supp.3d 889, 902 (N.D. Ill. 2014) (allegations that Sheriff knew of system malfunctions, yet allowed incarceration anyway, was sufficient to state a claim).

## II. Plaintiff Has Pleaded a Cognizable *Monell* Claim Against CHC, CCS, and Sheriff McCoy

As stated above, *Monell* permits suits against municipal entities, including CHC and CCS,[2] under § 1983, "when a governmental policy or custom caused the constitutional deprivation". *Hahn*, 762 F.3d at 638-39. To state a *Monell* claim, Plaintiff must show the existence of an official policy that is the "moving force" of the deprivation of a constitutional right. *See Monell*, 436 U.S. at 694; *Teesdale v. City of Chi.*, 690 F.3d 829, 834 (7th Cir. 2012). "A plaintiff can establish an official policy through (1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Id.* To prevail on his *Monell* claims, Plaintiff must show that Young's injury "was caused by a municipal policy, custom, or practice of deliberate indifference to medical needs, or a series of bad acts that together raise the inference of such a policy." *See Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 796 (7th Cir. 2014). "When an entity has been deliberately indifferent and failed to implement appropriate policies to address known problems, including suicide prevention procedures in a county jail, it is actionable under *Monell*." *Riley v . County of Cook*, 682 F.Supp.2d 856, 861 (N.D. Ill. 2010) (citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)).

Plaintiff does not allege that an express policy exists, nor does he allege that Young's injury was caused by a person with "final policymaking authority." Thus, the

---

[2] Private corporations, like CHC and CCS, that have contracted to provide essential government services are subject to at least the same rules that apply to public entities. *Glisson v. Ind. Dept. of* Corrections, 849 F.3d 372, 378-79 (7th Cir. 2017).

Court must determine whether Plaintiff has sufficiently pleaded a "widespread practice". In order to establish a "widespread practice," a plaintiff must show that the practices, decisions of lawmakers, or acts of policymaking officials are "so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Furthermore, one incident of an alleged constitutional violation is insufficient to show a municipal custom or policy, "the plaintiff must allege a specific pattern or series of incidents that support the general allegation." *Hossman v. Blunk*, 784 F.2d 793, 796-97 (7th Cir. 1986); *Thomas*, 604 F.3d at 303 (citing *Cosby v. Ward*, 843 F.2d 967, 983 (7th Cir. 1988) (in defining a "wide-spread custom or practice, ... there is no clear consensus as to how frequently such conduct must occur to impose *Monell* liability, except that it must be more than one instance.")).

Initially, the Court notes that Plaintiff has incorrectly brought official-capacity *Monell* claims against Officers Hanse, Kester, Smith, and Michel and Superintendent Asbell. A suit against an officer in his official capacity "generally represent[s] only another way of pleading an action against [the] entity of which [the] officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). All of the named officers and Superintendent Asbell report to, and are hired by, the Sheriff. As such, only Sheriff McCoy is a proper defendant for Plaintiff's *Monell* claims against the Sheriff's Department. *See id.* at 170 (noting that the proper parties in an official-capacity § 1983 suit are the State or state officials in their official capacity). Plaintiff's *Monell* claims against Officers Kester, Michel, Smith, and Hanse and Superintendent Asbell are DISMISSED. *See Riley*, 682 F.Supp. 2d at 862 (dismissing claims against

individual officers in their official capacities because plaintiff's allegations implicated individual capacity claims only).

As to Plaintiff's *Monell* claims against CHC, CCS, and Sheriff McCoy (hereinafter referred to as the "*Monell* Defendants"), drawing all inferences in Plaintiff's favor—as the Court must do—the Court finds that Plaintiff has sufficiently stated a *Monell* claim against them. *Cf. Estate of Sims* ex rel *Sims v. County of Bureau*, 506 F.3d 509, 514 (7th Cir.2007) (stating that "a federal court may not apply a heightened pleading standard more stringent than the usual Rule 8(a) pleading requirements" with respect to *Monell* claims).

Plaintiff does not allege that other suicides have occurred at the Peoria County Jail due to the deliberate indifference of the *Monell* Defendants. *See Estate of Perry v. Wenzel*, 872 F.3d 439, 461 (7th Cir. 2017) ("[I]t is well-established that [Plaintiff] must do more than simply rely upon his own experience to invoke *Monell* liability."). However, under the particular circumstances of this case, the Court finds that this omission is not fatal to Plaintiff's *Monell* claims at the pleading stage. "[E]vidence of a single violation of federal rights can trigger municipal liability if the violation was a 'highly predicable consequence' of the municipality's failure to act." *Woodward v. Correctional Medical Services of Ill., Inc.*, 368 F.3d 917, 929 (7th Cir. 2004) (citing *Bd. of Cty. Comm'rs of Bryan Cty.*, 520 U.S. 397, 409 (1997)); *Grieveson v. Anderson*, 538 F.3d 763, 774 (7th Cir. 2008) (noting "that it is not impossible for a plaintiff to demonstrate the existence of an official policy or custom by presenting evidence limited to his experience.").

In *Woodward*, the Seventh Circuit held that Correctional Medical Services could still be held liable under *Monell* for an inmate's suicide even though no previous suicides had occurred on CMS' watch. 368 F.3d at 929. The Court found that "there was a direct connection between inadequate CMS policies—not training its employees properly, permitting nurses not to completely fill out intake forms, allowing [the Doctor's] practice of not reviewing intake forms, and condoning [the Doctor's] resistance to putting inmates on suicide watch—and [the decedent's][] death." *Id.* at 928-29.

So to here, Plaintiff alleges more than just conclusory allegations of policies or widespread practices on the part of the *Monell* Defendants. Plaintiff alleges *specific* policies condoned or implemented by the *Monell* Defendants that directly connect to Young's death:

> (1) fostering an atmosphere at the Peoria County jail where correctional and medical personnel are permitted to ignore and/or disregard detainees who are "dope sick" or who are going through alcohol and/or drug withdrawal; (2) implementing practices that ensure failures to respond to the serious medical needs of detainees within a reasonable and effective time frame; (3) implementing practices wherein assessments and evaluations of a detainee's mental and physical condition are performed inadequately and/or are performed by unqualified persons; (4) implementing practices whereby detainees who are participating in methadone NTPs are denied access to proper and effective medications and medical treatment, and are ignored and disregarded; (5) implementing practices whereby detainees are not properly and/or adequately monitored, checked, and/or supervised for deteriorating, and/or worsening physical and mental health conditions; (6) implementing practices which permit and/or encourage medical personnel to ignore and/or disregard detainees who are suffering from heroin and/or opioid addiction and withdrawal while incarcerated at the Peoria County Jail; (7) implementing practices at the Peoria County Jail

for medical personnel whereby medical treatment referrals are denied to detainees, including the Decedent, TYLOR, and/or whereby referrals for medical treatment and medical services are ignored in favor of placing detainees into the general population of the Peoria County Jail; (8) implementing practices whereby Peoria County Jail medical personnel are permitted to ignore and/or disregard the suicide threats, suicidal ideations, and/or suicidal behaviors of detainees at the Peoria County Jail; (9) implemented practices wherein contracts between the Defendants, CHC[] and CCS, and the Defendants, SHERIFF and PEORIA COUNTY, for medical and mental health services provide financial incentives to the Defendants, CHC[] and CCS, for providing sub-standard medical and mental health services to detainees who suffer from mental illness, and/or drug and/or alcohol withdrawal while incarcerated as a detainee at the Peoria County Jail; and (10) implemented practices, customs, and policies for medical personnel at the Peoria County Jail which by design minimizes the amount of medical services provided to detainees, and limits access to adequate and property physical and mental health services and treatment for detainees.

Plaintiff alleges that the *Monell* Defendants acted with deliberate indifference by failing to institute, or condoning, the aforementioned practices or policies, and that Young's suicide was a result of that direct indifference. These specific allegations differentiate this case from others where plaintiffs have failed to tie the alleged policies or practices to their particular injury. *Compare Simmons v. Godinez*, No. 16-4501, 2017 WL 3568408, *3-*4 (N.D. Ill. Aug. 16, 2017) (plaintiff stated *Monell* claim where he identified specific policy that he held responsible for his long-undiagnosed back pain); *with, Taylor v. Wexford Health Sources, Inc.*, No. 15-5190, 2016 WL 3227310, *4 (N.D. Ill. June 13, 2016) ("Instead of tying his injury to specific policies, Taylor has chosen to provide a laundry list of ten alleged policies maintained by Wexford."); *and, Arita v. Wexford Health Sources, Inc.*, No. 15-1173, 2016 WL 6432578, *3 (N.D. Ill. Oct. 31, 2016) (plaintiff provided just one, conclusory *Monell-*

related allegation, while the remainder of his complaint focused on plaintiff's own experience).

Plaintiff alleges that the Sheriff was responsible for promulgating rules, regulations, policies, practices and procedures for the provision of mental health care by medical personnel and correctional officers to inmates and pre-trial detainees. Plaintiff also alleges that the *Monell* Defendants participated in budget meetings together, and implemented budgeting plans that left mental health needs of inmates unmet. He further alleges that the *Monell* Defendants were aware that correctional staff and medical employees were prone to ignoring inmates and pre-trial detainees with mental health problems, and that the Sheriff was aware that correctional officers failed to conduct frequent cell checks as required. Plaintiff's assertions are sufficient to establish official-capacity claims against CHC, CCS, and Sheriff McCoy. *See Riley*, 682 F.Supp. 2d at 861-62 (finding similar allegations to be sufficient).

### III. Plaintiff's Illinois Wrongful Death Claim Against the Medical Defendants is Dismissed Without Prejudice for Failure to File the Required Certificate Under Illinois Law

Plaintiff purports to bring a claim against the Medical Defendants under the Illinois Wrongful Death Act ("IWDA"), 740 ILCS 180/1 *et seq*. IWDA provides an independent cause of action for damages arising from a decedent's death caused by a wrongful act, neglect, or default. 740 Ill. Comp. Stat. Ann. 180/1. A plaintiff seeking damages under IWDA "must attach to his complaint either (1) an affidavit confirming that he has reviewed the facts of the case with a health care professional and that the professional believes that there is a 'reasonable and meritorious cause for the filing

of such action,' as well as a copy of the professional's written report on the case, or (2) an affidavit stating an acceptable reason why such an opinion and report could not be obtained." *Hahn*, 762 F.3d at 628 (citing 735 ILCS 5/2-622(a)). "The failure to file a certificate required by this Section shall be grounds for dismissal." 735 ILCS 5/2-622(g). Plaintiff did not file the required certificate with his second amended complaint, and his claim must therefore be dismissed without prejudice. *Hahn*, 762 F.3d at 633-34.

### IV. Plaintiff's ADA Claim Against Superintendent Asbell is Dismissed

Plaintiff purports to bring an ADA claim against Sheriff McCoy and Superintendent Asbell in their official capacities. This Court has already held that Plaintiff has sufficiently pleaded an ADA claim against Sheriff McCoy. (Doc. 30 at 13-14). This Court has also held that "because the Correctional Superintendent is hired and fired by the Peoria County Sheriff, suing the Correctional Superintendent in his official capacity is equivalent to bringing a suit against the Peoria County Sheriff." *See id.* at 13 n.6. Plaintiff relies on *Howe v. Godinez*, No. 14-844, 2014 WL 4947245 (S.D. Ill. Oct. 1, 2014) for the proposition that Superintendent Asbell can be sued in his official capacity under the ADA. But the *Godinez* plaintiffs did not bring suit against the county sheriff. The *Godinez* court noted that plaintiffs' ADA claim "need not proceed against every Defendant in connection" with the ADA count, and that the proper defendant "is the relevant state department or agency." *Id.* at *6. In *Godinez*, the (only) proper defendant was the Director of the Illinois Department of Corrections; in this case, the proper defendant is the Sheriff.

### V. Plaintiff's § 1983 Claims are Not Barred by the Statute of Limitations or the Illinois Tort Immunity Act

The Correctional Defendants argue that the Illinois Tort Immunity Act ("ITIA"), 745 ILC § 10/2-201, which provides immunity to public officials involved in determining policy or exercising discretion, shields the individual Correctional Defendants from § 1983 liability. However, as the Seventh Circuit has held, immunity on federal claims, such as those brought pursuant to 42 U.S.C. § 1983, is a matter of federal law. *Payne*, 161 F.3d at 1038; *Howlett v. Rose*, 496 U.S. 356, 375 (1990) ("The elements of, and the defenses to, a federal cause of action are defined by federal law."). ITIA does not provide the individual Correctional Defendants immunity from Plaintiff's § 1983 claims. *See Thomas* ex rel. *Smith v. Cook County Sheriff*, 401 F.Supp.2d 867, 875 (N.D. Ill. 2005) (holding that ITIA does not shield defendants from section 1983 claims because federal laws are supreme to state laws under the Supremacy Clause).[3]

The Correctional Defendants also argue, again, that Plaintiff's § 1983 claims are time-barred. This Court has already held that Plaintiff's § 1983 claims, which are governed by Illinois' two-year statute of limitations, are timely. (Doc. 30 at 15-16); *see Kalimara v. Ill. Dept. of Corrections*, 879 F.2d 276, 276 (7th Cir. 1989).

### CONCLUSION

In summary:

---

[3] To the extent the Correctional Defendants argue that they are entitled to qualified immunity, such arguments are without merit. Because Plaintiff has stated a claim for deliberate indifference against some of the defendants, this necessarily precludes a finding of qualified immunity at this time. *Cavalieri*, 321 F.3d at 623 (holding that the right to be free from deliberate indifference suicide was clearly established as early as 1998).

1) Plaintiff has stated individual-capacity § 1983 claims against Nurse Radcliff-Tish, Sheriff McCoy, and Superintendent Asbell;

2) To the extent Plaintiff attempts to bring a § 1983 claim against CHC and CCS based on a theory of *respondeat superior*, that claim is DISMISSED WITH PREJUDICE;

3) Plaintiff has not stated individual-capacity § 1983 claims against Officer Michel, Officer Kester, Officer Smith, and Officer Hanse. Those defendants are hereby DISMISSED WITH PREJUDICE from this action;

4) Plaintiff has stated official-capacity § 1983 claims pursuant to *Monell* against CHC, CCS, and Sheriff McCoy;

5) Plaintiff's *Monell* claims against Officer Hanse, Officer Michel, Officer Kester, Officer Smith, and Superintendent Asbell are DISMISSED WITH PREJUDICE;

6) Plaintiff's Illinois Wrongful Death claim against the Medical Defendants is DISMISSED WITHOUT PREJUDICE for failure to file the required certificate under Illinois law;

7) Plaintiff's ADA claim against Superintendent Asbell is DISMISSED. Plaintiff's ADA claim against Sheriff McCoy remains; and

8) Plaintiff's § 1983 claims are not barred by the statute of limitations or ITIA.


Entered this 15th day of December, 2017.

s/ Joe B. McDade
_____
JOE BILLY McDADE
United States Senior District Judge